**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY**

| | |
|---|---|
| LAWRENCE RASNIC, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | )   **Case No.        2:17-02064-CM-GEB** |
| v. | ) |
| | ) |
| FCA US LLC | ) |
| f/k/a CHRYSLER GROUP LLC | ) |
| | ) |
| Defendant. | ) |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs Lawrence Rasnic and Rebeca Lopez-Rasnic, on behalf of themselves and all others similarly situated, allege against Defendant FCA US LLC ("FCA" or "Chrysler"):

**NATURE OF THE CASE**

1.     This is a class action for breach of warranty and violation of the Magnuson-Moss Warrant Act ("MMWA"), breach of the Implied Warranty of Merchantability ("IWOM"), and violations of the Kansas Consumer Protection Act ("KCPA") against Chrysler, arising out of its defective uConnect "infotainment" system.

2.     Chrysler has not only installed the defective uConnect system in tens of thousands of vehicles over the past several years, but it also has falsely advertised the uConnect system and subsequently sought to cover its tracks by making materially misleading and false statements designed to hinder consumers from uncovering and pursuing action to remedy the defects.

3.     Since 2013, Chrysler has issued at least 45 Technical Service Bulletins ("TSBs") related to the uConnect, which is installed in numerous automobiles manufactured by FCA.[1]

---

[1] Attached as <u>Exhibit A</u> is a spreadsheet prepared by Plaintiffs that lists the TSBs for the uConnect, which Plaintiffs have compiled without the benefit of discovery.

4.      TSBs are repair/update instructions related to a known defect and are only provided to authorized warranty repair technicians (dealerships) and (sometimes) to the NHTSA.  Chrysler's TSBs go so far as to include a disclaimer prohibiting public dissemination.

5.      Like so many other auto manufacturers in the national news lately (*e.g*., General Motors and Volkswagen), Chrysler has deliberately decided to put its greedy thirst for profits ahead of the interests of its consumers and public safety. It knew (and still knows) the uConnect was flawed and is a ticking time bomb for many consumers across the country who are driving cars on the nation's roads and interstates.  Rather than confront and fix those issues (in part, by working with its suppliers, including Harman), however, Chrysler instead has decided to bury its head in the sand and deny that any problems exist.

6.      Rather than issuing a recall campaign, Chrysler launched a denial campaign.

7.      As unsophisticated consumers, Plaintiffs do not, at this time, know what causes the uConnect system to malfunction. Discovery is needed to uncover what is causing so many uConnect systems to fail. The overwhelming volume of online consumer complaints made regarding the uConnect system proves that this national crisis is more than "simply driver error."

8.      As a result of Chrysler's violations of the MMWA, the KCPA, and Kansas warranty law, as well as Chrysler's continued marketing of the uConnect, the value of Chrysler's vehicles containing the 8.4 inch uConnect has been artificially and falsely inflated. In turn, Chrysler's violations have caused the actual value of every automobile with a uConnect system to diminish in value, even if the serious defect has not manifested yet.

9.      In the early 2000s, Chrysler began developing, and subsequently marketing, its uConnect infotainment system.  At the time, Harman International Industries, Incorporated ("Harman") was responsible for manufacturing the uConnect system.

10.    As a part of its marketing campaign, Chrysler advertised the value of the uConnect system, along with its integration into numerous other accessories.

11.    Unfortunately, the uConnect has consistently failed to meet the promises issued by Chrysler on its behalf.    It was not long before the uConnect began to display severe issues. Specifically, the uConnect system will become completely unusable; the screen will go completely blank or "black out," rendering the uConnect systems unusable.

12.    This is a problem that Chrysler has known of since at least March 2013, yet it continues to deny it exists, and refuses to issue a recall.    Discovery will be necessary to determine when exactly Chrysler first learned of the uConnect's shortcomings.    Additionally, Chrysler continues to extensively market its defective uConnect system, without disclosing the severe problems that come along with it.

## PARTIES

13.    Plaintiff Lawrence Rasnic ("Det. Rasnic") is a Kansas resident and consumer. Lawrence is employed as a Detective with the Kansas City, Kansas, Police Department.

14.    Plaintiff Rebeca Lopez-Rasnic ("Rebeca") is a Kansas resident and consumer.

15.    Plaintiffs bring this lawsuit against Chrysler individually and on behalf of all other similarly situated consumers.

16.    Defendant FCA US LLC f/k/a Chrylser Group LLC is a Delaware Limited Liability Company with its principal place of business in Michigan.    Chrysler can be served by serving its registered agent, The Corporation Company, Inc., at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603. Chrysler has already been served and removed this case to federal court.

3

## REMOVAL, JURISDICTION, AND VENUE

17.    On or about February 2, 2017, Chrysler removed this case from the District Court of Wyandotte County, Kansas, to the United States District Court for the District of Kansas, asserting jurisdiction under 28 U.S.C. § 1332(d)(2).

18.    Chrysler also asserted that venue is proper pursuant to 28 U.S.C. §§ 96, 1441(a).

## FACTS COMMON TO ALL COUNTS

19.    Throughout the 20th Century, car radios were singularly purposed, but that began to change in the late 1990s and early 2000s when car manufacturers began to delve into Telematics.[2]

20.    In the automotive industry, Telematics were initially used to integrate a car's radio with a cell phone—though this would later expand to encompass other features.

21.    In 2003, Chrysler introduced its Consumer Telematics Platform, which it called the uConnect "infotainment" system.

22.    At first, the uConnect system was only available as a factory-installed option in the 2004 Model Year Chrysler Pacifica.[3]

---

[2] Telematics is a mashup of "telecommunications" and "informatics." It is "any integrated use of telecommunications with information and communications technology. It is the technology of sending, receiving and storing information relating to remote objects – like vehicles – via telecommunication devises." Stacey Papp, *What is Telematics?*, FLEETMATICS (Date Unknown), *available at* https://www.fleetmatics.com/what-is-telematics (Last visited January 20, 2017). "Telematics is all about being able to get information on vehicles." Robert Prime, *Telematics History And Future Predictions*, TELEMATICS.COM (May 30, 2013), *available at* http://www.telematics.com/telematics-history-future-predictions/ (Last visited January 20, 2017).

[3] Chrysler Group Technology, *UCONNECT HANDS FREE COMMUNICATION SYSTEM, available at* https://chryslerdocs.esecurecare.net/dav/PDFs%20BOK/Media%20Systems/experience_freedom_uconnect.pdf (last accessed November 8, 2016); Chrysler Group, *June 16, 2003 Press Release*, June 16, 2003, *available at* http://www.prnewswire.com/news-releases/uconnect-available-at-all-chrysler-dodge-and-jeepr-dealerships-nationwide-71319427.html (last accessed November 8, 2016).

23.    Beginning in 2007, Chrysler expanded the availability of the uConnect system to numerous other models.[4]

24.    The First Generation uConnect systems were primarily a means of integrating the car's radio with a cell phone.  However, later generations would integrate numerous other functions.

25.    The Second Generation of the uConnect system included the addition and integration of a navigation system, remote door un/locking, climate control, and other features.

26.    The uConnect system comes with several different sizes for the touchscreen.  However, the most used size is 8.4 inches.  The uConnect also comes in smaller sizes, including a 4.3 inch model and a 5.0 inch model.  This proposed class action pertains only to the 8.4 inch uConnect.

27.    Currently, Chrysler has at least six models of the 8.4 inch uConnect system, including the 8.4N/RB5, the 8.4/RE2, the 8.4AN/RA4, the 8.4/RA3, the 8.4 NAV/RA4, and the 8.4 NAV/RB5.  One or more of these models is available on the Model Year 2013 through 2016 Dodge Dart.[5]

28.    Additionally, and upon information and belief, the 8.4 inch uConnect system is and was available on several other models in the 2013 through 2016 Model Years, including the Chrysler 300, the Dodge Charger, the Dodge Challenger, the Dodge Journey, the Dodge Viper, the RAM 1500, the RAM 2500, the RAM 3500, the RAM 3500 Chassis Cab, the RAM 4500 Chassis Cab, and the RAM 5500 Chassis Cab.  Discovery will be needed to determine each model and model year the 8.4 inch uConnect was available on.

---

[4] *Id.*
[5] *See http://www.driveuconnect.com/system/dodge/*.  Navigate through the various models and makes using the drop-down menus.  Last accessed November 8, 2016.

29.    In 2014, Chrysler Group LLC rebranded to FCA US LLC.

30.    Upon information and belief, Chrysler used non-party Harman Industries to manufacture the uConnect system. Upon information and belief, in 2013 and 2014, Harman advertised the uConnect as one of its products and as being available exclusively in Chrysler vehicles.

### ADVERTISING THE UCONNECT:
### CRHYSLER'S COVER-UP CAMPAIGN

31.    Automobile manufacturers increasingly compete for customers based on their infotainment systems.[6]

32.    Consumers oftentimes buy automobiles based on the infotainment package or options available, and Chrysler and other manufacturers price the "optional" infotainment system separately from the base price for the automobile. This separate pricing—which FCA has referred to as a "purely optional feature"—suggests that the infotainment system is a separate "good" apart from the automobile, but further discovery is needed to confirm this.

33.    FCA's "purely optional" pricing allows buyers to know exactly what price Chrysler sets for the infotainment system (e.g., an $800 optional package). By setting the price for the uConnect system separately as an optional feature not standard in all cars, Chrysler is confirming that the uConnect has independent value and can be priced and valued separately from the automobile. When the uConnect comes standard, this stand-alone price is integrated into the cost of the vehicle. Thus, even if the automobile functions perfectly, if the uConnect malfunctions, that

---

[6] For example, Audi prominently features its infotainment system in this 2016 advertisement for its 2017 Model Year Q7 titled "Technology": https://www.youtube.com/watch?v=Qg_lNQr9Qf0 and in this advertisement: https://www.youtube.com/watch?v=N5niEyLGN0w.
BMW prominently featured its infotainment system, specifically its ability to detect hand gestures to do things like turn the volume up or down and answer incoming calls: https://www.youtube.com/watch?v=U4YJTl3k0jA.

defect can be separately quantified and valued. It is reasonable to value it based on the retail price set by Chrysler for the uConnect system.

34.    Even if the uConnect is sold standard in some of Chrysler's automobiles, its value is still the same and should be priced and valued based on the optional feature pricing set by Chrysler for other models in which it is not standard.

35.    The strong demand for infotainment systems affects the resale value of automobiles, and consumers with a defective infotainment system face a diminished resale price when they go to sell cars with defective infotainment systems. The market is efficient and car buyers looking at a used Chrysler-made product with a uConnect system will pay less because of the defective infotainment system.

36.    It is widely known that most infotainment systems in automobiles are difficult to use.  As a result, when a manufacturer claims to have the most advanced system, this plays a key role in their advertising and sales strategy.[7]

37.    Indeed, most, if not all, automobile manufacturers are beginning to view their infotainment system as "an extension of the car brand itself."[8]

38.    Chrysler's uConnect system is prominently featured in many of its advertisements and is a critical factor that influences buyers to purchase Chrysler automobiles.

---

[7] Jordan Golson, *Google and Chrysler use Android to revamp the in-car touchscreen* (January 2, 2017), *available at* http://www.theverge.com/2017/1/2/14142996/google-android-fiat-chrysler-infotainment-car-touchscreen (last visited January 2, 2017).

[8] *Id.*; *see also* Cadillac, Cadillac CUE: Intuitive and Connected Driving in 2012 (October 12, 2011),                                    available                                    at http://media.gm.com/media/us/en/cadillac/news.detail.html/content/Pages/news/us/en/2011/Oct/1012cadillac.html (last visited December 29, 2016) (Don Butler, the U.S. Vice President of Cadillac Marketing stated that the Cadillac CUE infotainment system would become "a signature feature of Cadillac, and with the launch of the XTS luxury sedan, [and be] an opportunity for [Cadillac] to build a new level into the luxury consumer experience.").

39.      For example, in 2013, Chrysler released an advertisement, titled "How to Change Cars Forever." This advertisement was specifically for the 2013 Model Year Dodge Dart, and prominently featured the "huge display … bigger … no, bigger" of the uConnect system.[9]

40.      Later advertisements referenced this by describing the Dodge Dart as "the most technologically advanced vehicle in its class."[10]

41.      Because Chrysler knew that the uConnect was defective at the time this advertisement was made, Chrysler made a knowingly false statement with scienter and willful bad faith.

42.      This deception from 2013 is ongoing and continues to this day.

43.      Chrysler's current webpage for the Dart has a section dedicated to "Technology" that prominently features the 8.4 inch uConnect system:[11]

---

[9]    The "How to Change Cars Forever" advertisement can be viewed at: https://www.youtube.com/watch?v=gogQLQNrDds.

[10]    *See, e.g.*, https://www.youtube.com/watch?v=P4OpmiT24lw.  Upon information and belief, Chrysler released versions of this advertisement for each vehicle that contained the 8.4 inch uConnect system.

[11]    http://www.dodge.com/en/dart/technology/ (last visited December 19, 2016).



44.    The uConnect received similar prominence on Chrysler's website for the Dart in 2013.[12]  Upon information and belief, the uConnect has been similarly highlighted on Chrysler's webpage for each of its vehicles in which the uConnect was available, whether standard or optional, since at least 2013.

45.    Chrysler's Dart webpage states that the Dart "includes an 8.4-inch high-resolution touchscreen, an AM/FM radio, SiriusXM Satellite Radio with one year of service included, a remote USB port, SD card slot, audio input jack and available features that include Bluetooth Streaming Audio, Voice Command, Hands-Free Calling and Voice Text Reply (not compatible

---

[12] *See, e.g.*, November 3, 2013 snapshot of http://www.dodge.com/en/dart/technology, located at http://web.archive.org/web/20131103115248/http://www.dodge.com/en/dart/technology/#uconnect_overview (last visited March 15, 2017).

with iPhone mobile devices).  Get up-to-the-minute weather, fuel prices, sports and movie listings with Garmin Navigation and SiriusXM Travel Link included on the available 8.4 NAV."[13]

46.     Through all of these advertisements and website links, Chrysler implies to a reasonable consumer that the uConnect will function. A reasonable consumer would rely on these advertisements and website statements, which are specific and factual, to believe that if he or she purchased a Chrysler automobile with a uConnect system, then he or she would be able to use the uConnect system without it malfunctioning.

47.     Because the uConnect system is defective, Chrysler's advertisements and web statements are false—and have been knowingly false since at least 2013, because Chrysler knows that the specific factual statements it makes about the uConnect system are false based on the defective uConnect system.

48.     In addition to making specific factual promises about the features of the uConnect on its car-specific websites,[14] Chrysler maintains an independent website which is dedicated exclusively to the uConnect: www.driveuconnect.com.  Upon information and belief, Chrysler has maintained this website since at least January of 2012.[15]

---

[13]   DODGE, *8.4-inch UCONNECT TOUCHSCREEN*, DODGE.COM, *available at* http://www.dodge.com/en/dart/technology/ (last visited December 19, 2016).

[14]   *See, e.g.*, http://www.chrysler.com/200/technology.html (last visited March 28, 2017), http://www.dodge.com/en/dart/technology/ (last visited December 19, 2016), http://www.jeep.com/grand-cherokee/interior.html (scroll down to UCONNECT AND UCONNECT ACCESS section) (last visited March 28, 2017), http://www.ramtrucks.com/en/uconnect/ (last visited March 28, 2017).

[15]   Press Release: CHRYSLER GROUP LLC LAUNCHES NEW UCONNECT® WEBSITE (January 6, 2012) http://media.fcanorthamerica.com/newsrelease.do?id=11869&mid=102 (last accessed March 28, 2017).

49.    Chrysler stated that its "objective behind [www.driveuconnect.com] is to educate our consumers on the available technology …."[16] This education was false and deceptive because Chrysler made affirmative statements and did not reveal the defect(s) with the uConnect.

50.    By choosing to making affirmative statements to consumers, Chrysler assumed the duty to speak truthfully and to not omit any material facts.

51.    That January 6, 2012 press release also includes a link Chrysler's Twitter and to Chrysler's YouTube channel, which contains numerous videos dedicated exclusively to the uConnect.[17]

52.    One such video, posted on November 19, 2012 and titled "Chrysler Uconnect Systems and Technologies" features an interview with Joni Christensen, who is (or was) the "Head, Marketing, Uconnect Systems & Services Organization" for Chrysler.[18]

53.    In this video, Ms. Christensen can be seen driving a Chrysler vehicle with an 8.4 inch uConnect, and states that the uConnect is "really easy to learn and its really easy to use."[19] Ms. Christensen also repeatedly boasts that the uConnect can be used without ever taking your eyes off the road, stating that, with the uConnect, a consumer can "make phone calls … use the navigation system … it can all be done while your hands are on the wheel and your eyes are on the road."

---

[16] *Id.*
[17] *Id.*; https://www.youtube.com/user/PentastarVideo/search?query=uConnect (last visited March 28, 2017).
[18] https://www.youtube.com/watch?v=zib05rT1O78 (last viewed March 28, 2017).
[19] *Id.*

54.    Ms. Christensen also affirmatively represented that the uConnect would have numerous features.  This video advertisement (along with the others) expressly and impliedly represents that the uConnect system will function and not be defective.[20]

55.    In December of 2013, the driveuconnect website described the uConnect as "The next generation of in-vehicle connectivity."

56.    Over the years, Chrysler has changed the exact photographs, organization, and representations made on the driveuconnect website.  However, one thing has remained constant: Chrysler has always represented, either explicitly or implicitly, that the uConnect would actually function.

57.    The current iteration of the driveuconnect website advertises eight different models of the 8.4 inch variant.

58.    Additionally, in 2013 (and upon information and belief, in other years), Chrysler advertised its uConnect as coming with a complimentary year of SiriusXM Satellite Radio.

59.    However, none of these advertisements disclosed that the 8.4 inch uConnect systems are defective.

60.    Since at least 2013, and continuing to this day, Chrysler has engaged in an extensive marketing campaign to promote the uConnect and tout the uConnect as (essentially) the best infotainment system available.[21]

61.    Plaintiff does not know the exact dates each of the above-described advertisements were used, and, upon information and belief, Chrysler used numerous other advertisements to promote the uConnect.

---

[20] *Id.*

[21] This information would be readily obtainable through discovery.

62.     Upon information and belief, Chrysler's advertisements which highlighted (even if only briefly) the uConnect are and were intended to lead consumers to believe that the uConnect was defect-free and would actually function.

63.     Further, each of Chrysler's advertisements involving the uConnect stated, either implicitly or explicitly, that the uConnect would work.  As described in more detail below, these advertisements were therefore false because the uConnect has serious defect(s) which impair its ability to function and Chrysler is either unable or unwilling to remedy the defect(s).

64.     Because Chrysler was aware of these defects, its false statements in these advertisements were knowingly false, made with scienter, in bad faith, and with the intent to deceive.

## THE DEFECT(S)

65.     The uConnect systems are defective.  Specifically, they "lock up" or "black out," rendering each of the systems integrated into the uConnect system unusable.

66.     These defect(s) are and were latent, in that they could not be discovered by the consumers until the defect(s) manifested.

67.     These defect(s) also cause the radio to randomly change channels and/or randomly increase or decrease the volume.

68.     These defect(s) also cause the navigation system to revert to old maps.

69.     Additionally, these defect(s) cause the vehicle's climate control systems to cease working properly, frequently leading to an increasingly uncomfortable atmosphere in the vehicle.

70.     As a result of these defect(s), the uConnect creates a severe distraction.  When the uConnect (an accessory integral to numerous systems for the safe and comfortable operation of a

motor vehicle) malfunctions, the driver's attention will divert away from the road, and towards the radio, navigation, or climate in their car.

71.     The uConnect system, due to Chrysler's repeated refusal(s) and/or failures to cure the known problem(s), is a ticking time bomb.  Discovery is needed to uncover what, if any, accidents or other injuries have occurred.

**CHRYSLER'S DENIAL CAMPAIGN:**
**FOUR YEARS OF TSBs DESIGNED TO COVER UP THE KNOWN DEFECT**

72.     Chrysler has known of these defect(s) since at least March 2, 2013.  Discovery will be necessary to determine when Chrysler first learned of these defect(s).

73.     Over the last several years, Chrysler has released numerous Technical Service Bulletins ("TSBs") related to the uConnect's, including but not limited to: 08-013-13 on March 2, 2013; 08-038-13 on May 17, 2013; 08-049-13 on July 9, 2013 (later revised seven times); 08-033-15 on March 31, 2015 (later revised on August 11, 2015 and November 13, 2015); 08-059-14 on July 23, 2014 (later revised on September 6, 2014); 08-072-15 on July 16, 2015 (later revised on August 4, 2015); and, 08-028-16 on March 15, 2016.

74.     Upon information and belief, Chrysler has issued at least thirty (30) TSBs that relate to the uConnect since 2013.

75.     Chrysler has issued at least one uConnect-related TSB for each model vehicle that comes with the subject 8.4inch uConnect system.

76.     Each and every TSB Chrysler has issued has failed to remedy these problems.

77.     To date, Chrysler has not issued a formal recall for its uConnect systems.

78.     It is widely known that issuing a formal recall is expensive and will lower Chrysler's earnings.

**DODGE DART-SPECIFIC TSBs**

79.    On July 23, 2014, Chrysler issued a TSB, 08-059-14 for 2013 and 2014 Model Year Dodge Darts, pertaining to this issue. Specifically, this TSB applied to uConnect models 8.4/RE2, 8.4/RE6, 8.4N/RB5, and 8.4N/RB6.  The "fix" in this TSB involved an update to the flash software of the uConnect system.

80.    On September 6, 2014, Chrysler issued a revision to TSB 08-059-14, specifically, 08-059-14 REV. A.  This TSB revision superseded the original TSB.  This revision made two modifications.  First, it expanded the application from vehicles built "on or after November 16, 2012" to "on or after February 29, 2012."  Second, this TSB added additional steps to update the maps.  Upon information and belief, no other alterations from the original TSB were made.

81.    On August 18, 2015, Chrysler issued a second TSB pertaining to this issue, 08-080-15.  This TSB applied to 2013 through 2015 Model Year Dodge Darts, and proposed yet another software upgrade as the "fix" to the problem.

82.    On March 15, 2016, Chrysler issued a third TSB pertaining to this issue, 08-028-16.  This TSB also applied to 2013 through 2015 Model Year Dodge Darts, and superseded 08-080-15.  The only modification in this TSB was "**2013 MY [Model Year] Vehicles Only**"[22] with regards to the 8.4N/RB5 and 8.4N/RB6 Model uConnect systems.  The proposed solution did not change, and this TSB did not propose *any* solution for 2014, 2015, or 2016 Model Year Dodge Darts that had an 8.4N/RB5 or 8.4N/RB6 model uConnect systems.

83.    The 08-028-16 TSB also required technicians performing the specified software updates to assign a "failure code" to the task.  Failure code "CC" was to be used if the updates were performed due to a customer complaint specific to these issues, while failure code "RF" was

---

[22] Upon information and belief, Chrysler uses asterisks in its TSBs to more readily identify changes from previous versions.

to be used if the updates were performed due to routine maintenance or while addressing a customer complaint related to another issue.

84.    Unfortunately, none of the TSBs issued to date have produced more than a brief, temporary, "Band-Aid" solution.  In some cases, the TSBs have not even provided a temporary solution.

## EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

85.    Any applicable statute(s) of limitations have been tolled by Chrysler's illegal, deceptive, and fraudulent practices. Chrysler has concealed from Plaintiffs and the proposed Classes the truth about their illegal, deceptive, and fraudulent practices described herein, along with the defect(s) with the uConnect, thereby tolling the running of any applicable statutes of limitations.

86.    Plaintiffs and the class had no knowledge and could not have reasonably discovered Chrysler's illegal, deceptive, and fraudulent practices as alleged herein until recently.

87.    Chrysler is estopped from relying on any statute of limitations defense(s) because of its illegal, deceptive, and fraudulent practices as alleged herein.

## PLAINTIFFS LAWRENCE RASNIC AND REBECA LOPEZ-RASNIC

88.    On or about June 17, 2013, Plaintiffs purchased a 2013 Dodge Dart Limited (VIN: 1C3CDFCA3DD304645; "the Dart").

89.    At the time Plaintiffs purchased the Dart, it had approximately 60 miles.  Plaintiffs were the first, and, to date, only owners of the Dart.

90.    The Dart also came with an 8.4 inch uConnect system.

91.     Concurrently with the purchase of the Dart, Chrysler provided Plaintiffs with a warranty.  On information and belief, the warranty had a term of three years or 36,000 miles.[23]

92.     Therefore, the warranty Chrysler provided to Plaintiffs would not expire until June 17, 2016 or 36,000 miles, whichever happened first.

93.     Upon information and belief, this warranty was Chrysler's standard manufacturer's warranty, which it extends to all of its vehicles.  Upon further information and belief, Chrysler calls this warranty the "Basic Limited Warranty."

94.     Chrysler's Basic Limited Warranty covers everything except the tires and "Unwired headphones."[24] To the extent Chrysler challenges the terms of this Basic Limited Warranty or contends that the defects in the uConnect system are outside the scope of the Basic Limited Warranty, it has this information in its possession and can easily provide it to the Court and to Plaintiffs.

95.     Beginning around April 2016, Plaintiffs began noticing that the Dart's steering wheel was making a clicking noise when turning, and that the 8.4 inch uConnect system touchscreen would randomly black out.

96.     Simply because the defects were finally noticeable in April 2016 does not mean the defects did not exist before then. The defects existed from the time of manufacture by Harman or the supplier to Chrysler and/or at the time of installation into the automobile by Chrysler.  Either way, the defects existed at the time the automobiles were released onto the market by Chrysler.

97.     The defects in the uConnect system existed at the time the automobile left Chrysler's possession, and Plaintiffs did nothing to alter or cause the defects to occur.

---

[23]  *See* http://www.dodge.com/crossbrand/warranty/pdf/2013-Dodge-Warranty.pdf  (last  visited March 15, 2017).
[24] *Id.*, at p5.

98.    The Dart's uConnect system touchscreen would freeze and then shut off, leaving a blank, black screen.  When the touchscreen blacks out, the controls do not work.

99.    On April 23, 2016—less than three years after they had purchased the Dart—, Plaintiffs took the Dart to Olathe Dodge Chrysler Jeep ("Olathe DCJ") for service, mentioning both problems.  At the time, the Dart had approximately 32,400 miles.

100.    Therefore, as of the date that Plaintiffs first attempted to get their uConnect repaired under the Basic Limited Warranty, there were still almost two months and 3,000 miles remaining on the warranty.

101.    Olathe DCJ serviced the Dart that day, and while the clicking noise was fixed, the touchscreen was not.

102.    Olathe DCJ represented to Plaintiffs that Chrysler had issued a Technical Service Bulletin ("TSB") for the steering wheel, but not for the touchscreen.  Olathe DCJ also told Plaintiffs that the entire uConnect unit needed to be replaced, and they would have to order the necessary replacement.

103.    On May 14, 2016, Rebeca took the Dart to Olathe DCJ to have the uConnect replaced.  Olathe DCJ replaced the touchscreen that day.

104.    Unfortunately, the replacement uConnect developed the exact same problem—randomly blacking out—later that same day.

105.    Again on May 14, 2016, Rebeca took the Dart to Olathe DCJ.  On this occasion, Olathe DCJ represented that a "module" needed to be replaced, and it would take about a week to get the necessary parts.

106.    On June 1, 2016, Plaintiffs took the Dart back to Olathe DCJ, where the "module" was replaced.

107.    Unfortunately, replacing the "module" also failed to fix the problem, which actually began to grow worse.  Specifically, the uConnect would flash back and forth from black to white.

108.    On June 7, 2016, Plaintiffs again took the Dart to Olathe DCJ.  Olathe DCJ provided Plaintiffs with a loaner car on June 9, 2016.

109.    On information and belief, around this time, Olathe DCJ opened a Star Case.

110.    On information and belief, Chrysler's policy whenever a Star Case is opened is to send out a specialist to inspect the vehicle and attempt to determine and fix the problem.

111.    On information and belief, Chrysler's specialist inspected the entirety of the Dart, including the battery and all of the wiring, attempting to find and fix the problem.

112.    On June 30, 2016, the loaner car broke down.  When Plaintiffs contacted Olathe DCJ, Olathe DCJ told them that the touchscreen on the Dart had been fixed, and they could just come pick it up.

113.    On June 30, 2016, Rebeca again visited Olathe DCJ to pick up the Dart.  While still at Olathe DCJ, Rebeca turned on the Dart, and the touchscreen immediately blacked out.  At this time, the Dart had approximately 34,046 miles.

114.    Plaintiffs informed Olathe DCJ's Service Manager—Jerry—about the problem. Jerry turned the Dart on and within minutes, the touchscreen again blacked out.

115.    Because the touchscreen was not fixed, Plaintiffs left the Dart with Olathe DCJ.

116.    On July 1, 2016, Plaintiffs pick up a second loaner vehicle from Olathe DCJ.

117.    On July 5, 2016, Olathe DCJ's Service Manager "Andy" contacted Plaintiffs and informed them that a new mechanic was taking over the Dart, and that they were starting over from scratch.  Olathe DCJ ordered yet another 8.4 inch uConnect touchscreen—the second since Plaintiffs' problem developed in April 2016, and the third overall.

118.    On July 14, 2016, Olathe DCJ's Service Manager "Andy" contacted Plaintiffs, saying that they believed the problem had been fixed, and asked for permission for his mechanic to drive the Dart home overnight to verify the problem was fixed.  Plaintiffs agreed.

119.    On July 15, 2016, Olathe DCJ contacted Plaintiffs, informing them that the touchscreen problem was fixed and that they could pick up the Dart.

120.    On July 16, 2016, Plaintiffs picked up the Dart, and the touchscreen appeared to work at that time.

121.    On July 26, 2016, the Dart's touchscreen again developed the exact same problem. Plaintiffs contacted Olathe DCJ and made an appointment for to them bring the Dart in for servicing.  Beginning with this third iteration of the problem, the touchscreen problems expanded and impacted various controls, including the Heating, Air Conditioning, and Navigation.

122.    On July 30, 2016, Plaintiffs left the Dart with Olathe DCJ.  Plaintiffs also spoke with Matt Butler ("Matt"), a Sales Manager at Olathe DCJ.  Matt told Plaintiffs that their Dart was likely eligible for the "buy back" program and that he would investigate and get back to Plaintiffs.

123.    Plaintiffs attempted to contact Matt daily from August 3, 2016 through August 5, 2016.  However, Plaintiffs were unable to get ahold of him, and left a message on each occasion.

124.    On August 6, 2016, Plaintiffs returned to Olathe DCJ.  However, Olathe DCJ had not even looked at the Dart, as it was potentially eligible for the "buy back" program.  Olathe DCJ provided Plaintiffs with Chrysler's customer care number.

125.    On August 6, 2016, Plaintiffs filed a complaint (#29861203) with Chrysler's customer care department.

126.    On August 10, 2016, Chrysler contacted Plaintiffs via email.  Specifically, someone named "Beatty" informed Plaintiffs that she was their case manager.

20

127.    On August 12, 2016, Plaintiffs spoke with Beatty, who informed Plaintiffs that their Dart was not going to be repurchased as a lemon, and that Plaintiffs would have to schedule an appointment with Olathe DCJ to have the touchscreen replaced—again.

128.    On August 15, 2016, Plaintiffs contacted Olathe DCJ to schedule an appointment. Olathe DCJ informed Plaintiffs that they would not have any loaner cars until August 19, 2016, so they should call back then to schedule an appointment.

129.    On August 18, 2016, Beatty contacted Plaintiffs and informed them that their complaint would be closed if they did not schedule an appointment by the end of business that day.

130.    Therefore, on August 18, 2016, Plaintiffs again contacted Olathe DCJ, and scheduled an appointment for August 20, 2016.  Plaintiffs then contacted Beatty to inform her of the appointment.

131.    On August 20, 2016, Plaintiffs took the Dart to Olathe DCJ, where the touchscreen was replaced.

132.    On August 23, 2016, Chrysler, by way of "Dominic," contacted Plaintiffs and informed them that their complaint had been closed, asserting that the issue had been fixed.

133.    However, on that same day, the touchscreen was again showing the same problem—randomly blacking out and locking up the controls.

134.    On August 27, 2016, Plaintiffs once again took the Dart to Olathe DCJ for servicing.  Olathe DCJ again replaced the touchscreen.

135.    On August 31, 2016, Plaintiffs attempted to contact Beatty, and left her a message.

136.    On September 1, 2016, Plaintiffs again attempted to contact Beatty, and were again unable to reach her.  Plaintiffs instead spoke to "Andrew" one of Chrysler's operators.  Andrew informed Plaintiffs that their case had been closed.

137.    Plaintiffs asked Andrew to re-open their case, as the problem had not been fixed. Andrew told Plaintiffs that he would note the call logs, and have someone contact Plaintiffs within 24 hours.

138.    On September 2, 2016, Beatty contacted Plaintiffs.  Plaintiffs informed Beatty that the touchscreen problems were ongoing.  Beatty told Plaintiffs that she would contact Olathe DCJ to see what could be done, and contact Plaintiffs.

139.    Plaintiffs attempted to contact Beatty on September 6, 2016, September 7, 2016, September 8, 2016, September 9, 2016, September 12, 2016, and September 14, 2016.  On each occasion, Plaintiffs were unable to reach Beatty, and either left a voicemail message or left a message with one of Defendant's operators.

140.    After two weeks of attempting to reach Beatty with no success, Plaintiffs contacted Chrysler's customer care department on September 14, 2016, and opened a new case (#30119653). Chrysler then told Plaintiffs that they would be contacted by a Supervisor within 24 hours.

141.    Chrysler's Supervisor did not contact Plaintiffs within 24 hours.

142.    On September 16, 2016, Plaintiffs again contacted Chrysler, who once again told Plaintiffs that a Supervisor would contact them within 24 hours.

143.    Chrysler's Supervisor did not contact Plaintiffs within 24 hours.

144.    On September 19, 2016, Plaintiffs again contacted Chrysler.  Plaintiffs were finally able to speak to one of Chrysler's Supervisors—"Engrid"—later that day when Engrid called Plaintiffs back.  Engrid asked Plaintiffs to make another appointment with Olathe DCJ to have the vehicle looked at.

145.    On September 20, 2016, Plaintiffs contacted Olathe DCJ and scheduled an appointment for October 1, 2016—which was Olathe DCJ's earliest opening.

146.    On September 22, 2016, Chrysler—through "Alma"—contacted Plaintiffs to inform them that Alma was the new case manager.

147.    On October 1, 2016, Plaintiffs again took the Dart to Olathe DCJ. Olathe DCJ opened a second Star case (#05091965ZK). However, Olathe DCJ and Chrysler either did not or were not able fix the uConnect.

148.    On October 2, 2016, the touchscreen continued to have the exact same black out problem.

149.    In the middle of October, on or about October 19, 2016, Chrysler again contacted Plaintiffs, and informed them that Chrysler could not fix the problem. Chrysler then offered Plaintiffs four (4) years of oil changes and free tire rotations instead of a solution to the uConnect problem.

150.    In late November 2016, Chrysler once again contacted Plaintiffs and informed them that it had issued another TSB that would fix the problem.[25] Therefore, at the next available appointment, Plaintiffs took the Dart to a dealership licensed by Chrysler to conduct warranty repairs.

151.    Upon information and belief, that dealership followed Chrysler's TSB(s) to the letter.

152.    However, this most recent "fix" still failed to actually fix the problem.

153.    To date, the Dart continues to have problems with the 8.4 inch uConnect touchscreen, wherein the touchscreen will randomly black out and freeze the controls, including, but not limited to, the volume and radio dial controls.

---

[25] Upon information and belief, Chrysler has not actually issued a TSB for this issue since June 2016, before Plaintiffs' Star Case was opened.

154.    On December 27, 2016, Chrysler's agent and/or employee "Jenny" called Plaintiffs and offered to sell them a different vehicle at employee pricing, plus an additional 5% off, plus all rebates going to Plaintiffs. Plaintiffs informed Jenny that they had retained counsel.

155.    On December 29, 2016, another of Chrysler's agent(s) and/or employee(s) contacted Plaintiffs and left a voicemail message.  In this voicemail, Chrysler was either seeking or providing confirmation that Plaintiffs had declined the December 27, 2016 offer.

## SIMILAR COMPLAINTS BY DODGE DART OWNERS

156.    Plaintiffs are among the many consumers who are experiencing these same uConnect issues.[26]

157.    A consumer in Detroit filed the following complaint with the National Highway Traffic Safety Administration ("NHTSA") (Complaint Number 10726150) on June 6, 2013:

> One hour after I accepted this auto with 7 miles on it, this happened---- while driving, the display screen went black for a few minutes. It happened on a regular basis. I kept taking the car back to the dealership until finally ,they saw it while it had blacked out. They replaced the radio siplay. It still keeps happening every few months ,but they never see it . .One year later, after many visits, they plan to replace it again. [...] The problems are not solved .

158.    A consumer in West Olive, Michigan filed the following complaint with the NHTSA (Complaint Number 10886010) on July 15, 2016:

> My radio with the touchscreen has been replaced 4 times I believe due to an electrical issue-continued to flicker on and off [...].

159.    On June 23, 2013, "Ebojager" complained on Dodge Dart Forum, stating:

> So I left my car home for the weekend and I get into drive it and the Uconnect display is black :-( no radio or anything, like its dead. No error messages anywhere.[...]

---

[26] Unless specifically noted, all spelling and grammar errors in these complaints are in the original. For formatting purposes, some hard returns have been removed.

160.    "sidecarsally" complained on Dodge Dart Forum on January 28, 2015:

Proud owner of a 2014 Dart GT here, but I've noticed 5 time snow on different days, my touchscreen has gone completely black for a few seconds then returned to normal.
I noticed this has ONLY happened in parking lots at very slow to zero speed, usually while shifting from drive/reverse to park, and vice versa. This morning it happened while reversing into a parking spot and my backup camera did not engage as a result. It also happened 10 seconds later when pulling forward a few inches to adjust my decision.
I had this in the shop and did a software update, but it did not resolve the issue. My mechanic said the shifting and cutting out of the touch screen could not be related.

161.    Several people commented on "sidecarsally"'s thread stating that their Dodge Darts were experiencing materially indistinguishable issues.

162.    "Gregsigafus88" complained on Dodge Dart Forum on February 15, 2015:

I have a 2014 rallye. Went to the gas station last night and everything was fine and hopped back in my car and turn it on and the touch screen is black and all the knobs below it for the radio and heat won't work the lights for those are all out as well.. No clue if its just a fuse.. My heat still works it just won't turn off because everything is out in that middle section and my radio is the same way.

163.    Several other people commented on "Gregsigafus88"'s thread, stating that their Dodge Darts were experiencing materially indistinguishable issues.

164.    On March 23, 2016, "killraven" commented on "sidecarsally"'s thread, stating:

For me there are 2 clear distinctions in the touchscreen malfunction. The first is the white screen, then goes blank and reboots itself on it's own. Usually takes less than 30 seconds for it to reboot on it's own. In this situation the radio is locked on whatever channel you had, volume is locked, and HVAC buttons do not work. In 2 years of ownership, I have had the white screen/reboot occur roughly 15 times.
The second, I call the blank screen of death. This is different from the white screen as this one is permanent. I have had this occur once time while the car was remote started in the winter. This left me with heated seats on full power, steering wheel heated on, radio locked and unable to adjust the volume, and my HVAC stuck on high fan speed/high heat. It was not fun. [...].

165.    On January 5, 2015, "Anch" commented on Dodge Dart Forums:

After the lunch break, while going back to work the radio automatically shutdown and restart and this is the second time it happened to me but let me explain how it fail:

Everything seems fine and then the screen suddenly turn black for around 5 sec, it turn back on and, slowly, the screen goes away with a kind of color fade with stripes and pixel till it reboot itself with only the fm and Sirius working while the usb, cd, Bluetooth and the gps not working.

Does it ever happen to someone else or does my car is possessed by Santa.

166. "walker601" a responded to Anch's complaint, stating that:

This very same thing has happened 3 times in the past 2 days and today after it reset the maps are out of date.(newer roads are suddenly not there anymore). I wish i knew what the issue was.

167. On October 18, 2016, "Capnbass91" complained on Dodge Dart Forums, stating that:

I'm still having this issue too.
Radio would freeze, then screen would go white and reboot.
First they updated the softare
Then they updated it again
Then replaced the radio
Then updated the software again
Since that last update it has happened twice.

168. On December 7, 2016, "steveb" commented on another thread on the Dodge Dart Forums describing these issues, stating that:

Count mine in on the BLACK SCREEN. Heat is on full blast and the heated seats are on HIGH. No front/rear defrost. The whole center stack is dead. Its at the dealer now with less than a month remaining on the warranty. I don't know if I can trust this car long term. It has been fairly trouble free but the "radio" has been resetting the time and audio settings randomly for over a year. […].

169. On December 17, 2016, "Zeprider" commented on a thread on Dodge Dart Forums describing these issues, stating:

Older thread, but I've had this problem since day 1.

170. On January 9, 2017, "tow2gunner" commented on a thread on Dodge Dart forums describing these issues, stating:

2016 Rallye – same issues . Just started at 850 miles – radio / display dead. Thankfully, the defroster is stuck on (with heat) so I could at least drive it. Heading back to dealer this afternoon – this will be the 3rd time (haven't owned it a month yet and only 910miles…) […]

## SIMILAR COMPLAINTS BY OWNERS OF OTHER CHRYSLER VEHICLES WITH AN 8.4 INCH UCONNECT

171.    On January 7, 2013, "Jrappleguy" complained on a thread on Dodge Charger Forums, stating:

> […]When I start up my car the screen allows me maybe one touch and then nothing else. This is especially annoying when you have your heated seats on full blast during a remote start and whenthey finally get too warm you cant shut them down. […]

172.    On January 19, 2013, "AK47" commented on Jrappleguy's thread, stating:

> […]I have had a 2013 SXT+ AWD since last October… yesterday the touch screen stopped responding to touch for the most part. […] Not being able to turn off heated seats definitely sucks when you don't want them on. […]

173.    On January 20, 2013, "acilis1" also commented on this thread, stating:

> Mine did the same thing. More than once. Car is scheduled for a new radio this week…which will make my third radio! Must be a common issue.

174.    On January 26, 2013, "punch9" complained on a thread on RamForumZ.com, stating that:

> Just bought a 2013 Ram sport. yesterday with my iphone hooked up the touch screen would shut off and restart several times. Then that evening, while listening to my radio, my volume controls would not work and navagation would not work. […]

175.    On the same day, "bryank47" commented on punch9's thread, stating:

> My Uconnect 8.4AN locks up all the time while driving, sometimes when someone opens a door to get out of the truck, locks up sometimes when I put a USB stick in . […]

176.    On March 13, 2014, "Baja4701" complained on a thread on RamForumZ.com, stating:

Anyone having problems with the 8.4AN screen blacking out after a period of time? I just last week had the dealer do the update. It was suppose to be one of the fixes. NOPE. 2 days after update, it blacked out on me again and won't come back on until I shut off the engine and restart. Everything still works after it goes blank, you just can't see or use the screen. […]

177.    On March 12, 2015, "Blazin383" complained on a thread on RamForumZ.com, stating that:

Okay, so I get in my new 2500 Laramie with 280 miles on it last night and drive away from the house only to find the UConnect screen showing the backup camera while in drive and moving forward. None of the control inputs will function. It then begins to flash between a blank (slightly illuminated) screen and the backup camera. I stop and put in park, reverse, drive, etc and nothing effects it. No audio controls, no HVAC controls, nothing. […]

178.    The same day, "Woody146" commented on Blazin383's thread, stating:

Yes.,hat happened to me..got in truck..started it up..screen came on […]then it went black..no music..buttons did not work..turned it off and on again..nothing […] Happened at about 600 mile mark […].

179.    On August 4, 2015, "yanclanman" complained on a thread on RamForumZ.com, stating that:

I've been having an issue with my 8.4" Uconnect on my 2013 Ram Crew Cab Sport 4x4 since I purchased it. The truck has had 4 radios, a new amp, a new media hub, and more but the screen continues to black out randomly. I am on the latest software 15.26.1 and the issue still persists. [...]

[In a subsequent post, yanclanman also complained that "the heated and cooled seats lose functionality, and the climate controls stop working as well."]

180.    On September 22, 2016, "RockG23" created a thread on DodgeDurango.net, stating:

My uconnect radio keeps rebooting. Over… And over… And over again. It's driving me nuts I can't control the radio or climate through the touchscreen. The screen literally reboots every 10 seconds or so and I don't have enough time to get into a menu or setting before it reboots again. […]

28

## CLASS ACTION ALLEGATIONS

181.    Plaintiffs propose that they represent the following Classes:

**Class A:**

All natural persons who purchased and/or leased a Subject Vehicle manufactured by Defendant FCA US LLC in the State of Kansas on or after January 12, 2013.

**In the alternative to Class A, Class B:**

All natural persons who purchased and/or leased a Dodge Dart manufactured by Defendant FCA US LLC that contained an 8.4 inch uConnect "infotainment" system in the State of Kansas on or after January 12, 2013.

**Class C:**

All natural persons who purchased and/or leased a Subject Vehicle manufactured by Defendant FCA US LLC on or after January 12, 2013.

**In the alternative to Class C, Class D:**

All natural persons who purchased and/or leased a Dodge Dart manufactured by Defendant FCA US LLC that contained an 8.4 inch uConnect "infotainment" system on or after January 12, 2013.

182.    The term "Subject Vehicle" shall include all 2013 or newer Model Year vehicles that contained an 8.4 inch uConnect "infotainment" system.

183.    For the purposes of the proposed class definitions, the "on or after" clause shall refer to the date of purchase and/or lease, not the date of manufacture.

184.    Plaintiffs propose that the following persons shall be excluded from the proposed Classes: (1) Chrysler and its subsidiaries and affiliates; (2) governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members thereof; (4) Plaintiffs' counsel; (5) all persons who have previously settled these claims against Chrysler.

185.    <u>Numerosity and Ascertainability.</u> The members of the Proposed Classes are so numerous that individual joinder of all members is impracticable.  Plaintiffs are informed and

believe the number of people who would be members of the Proposed Classes number in excess of the tens of thousands.   Per Chrysler's removal documents, there are at least 22,000 members of Class B alone, which is the smallest of the proposed classes.   The precise number of class members and their addresses are unknown to Plaintiffs; however, this information would be readily available from Chrysler's records.   Further, each of the class definitions is crafted using exclusively objective questions to determine membership, making these classes easily ascertainable.

186.   <u>Commonality and Predominance.</u> This action involves common questions of law and/or fact that predominate over any questions affecting individual class members.   These common questions include, but are not limited to, the following:

a.   Whether Chrysler has represented that the Subject Vehicles had uses that they do not and did not have;

b.   Whether Chrysler has represented that the Subject Vehicles had benefits that they do not and did not have;

c.   Whether Chrysler's representations as to the uses and/or benefits of the Subject Vehicles were made knowingly or with reason to know;

d.   Whether Chrysler has and/or had a reasonable basis to rely upon in making the representations about the uses and/or benefits of the Subject Vehicles;

e.   Whether Chrysler has represented that the Subject Vehicles were of a particular standard, quality, grade, style, and/or model;

f.   Whether the Subject Vehicles were in fact of that particular standard, quality, grade, style, and/or model;

g.   Whether Chrysler representations as to the standard, quality, grade, style, and/or model were made knowingly or with reason to know;

h.   Whether Chrysler, in oral and/or written representation(s), employed exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s);

i.    Whether Chrysler's use of exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s) in oral and/or written representation(s) was willful;

j.    Whether Chrysler failed to state a material fact;

k.    Whether Chrysler concealed, suppressed, and/or omitted a material fact;

l.    Whether Chrysler's failure to state a material fact was willful;

m.    Whether Chrysler's concealment, suppression, and/or omission of a material fact was willful;

n.    Whether Chrysler took advantage of Plaintiffs' and the members of the proposed Class' inability to protect their interests because of their ignorance of the law;

o.    Whether the 8.4 inch uConnect systems are covered by Chrysler's Basic Limited Warranty;

p.    Whether Chrysler has honored its Basic Limited Warranty;

q.    Whether Chrysler is a merchant in goods of the kind;

r.    Whether Chrysler's goods conformed to the minimum standards of merchantability;

s.    Whether Chrysler disclosed that the uConnect systems are defective;

t.    Whether Plaintiffs and the members of the proposed Class are entitled to damages; and,

u.    In what amount are Plaintiffs and the members of the proposed Class entitled to damages.

187.    <u>Typicality.</u> The named Plaintiffs' claims are typical of the claims of the Classes because, among other things, Plaintiffs purchased a 2013 Dodge Dart with an 8.4 inch uConnect "infotainment" system.

188.    <u>Adequacy of Representation</u>. Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Classes they seek to represent. Additionally, they have retained counsel competent and experienced in complex consumer class

action litigation.  Plaintiffs intend to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

189.     This case can properly be maintained as a class action pursuant to K.S.A. § 60-223(b)(3) because the common questions of law and/or fact predominate over the individual questions and because a class action is superior to all other available means for the fair and efficient adjudication of the claims.

190.     Superiority. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiffs and the Class members' claims.  Because of the relatively modest size of each individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein on an individual basis.  Absent a Class Action, the members of the proposed Classes would not be likely to recover, or would not likely have the chance to recover, damages and/or restitution, such that Chrysler would be permitted to retain the proceeds of its unlawful conduct.

**COUNT ONE:**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(Plaintiffs and All Class Members**
**All Defendants)**

191.     Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

192.     Plaintiffs are each a "consumer," as defined by 15 U.S.C. § 2301(3).

193.     Each member of the proposed Classes are also a "consumer," as defined by 15 U.S.C. § 2301(3).

194.     Chrysler is a "supplier" and a "warrantor," as defined by 15 U.S.C. § 2301 (4) and (5).

195.     The Dart is a "consumer product," as defined by 15 U.S.C. § 2301 (1).

196.    The Subject Vehicles are "consumer product[(s)]," as defined by 15 U.S.C. § 2301 (1).

197.    The "Basic Limited Warranty" Chrysler provided to Plaintiffs was a "written warranty," as defined by 15 U.S.C. § 2301 (6).

198.    Each member of the proposed Classes was also provided with a "written warranty" which was the same as and/or materially indistinguishable from the one provided to the named Plaintiffs.

199.    The "Basic Limited Warranty" provides for remedying all defects in the uConnect system, and the uConnect system is within the scope of the warranty.

200.    While Plaintiffs were not charged for Chrysler's *attempts* to remedy the uConnect's defect(s), each of Chrysler's attempts has, to date, failed to actually remedy the problem. And a futile repair is effectively the same as no repair at all. As noble as it is to try and fail, Chrysler's futile attempts to repair the uConnect do nothing to benefit Plaintiffs, and by consuming days of time and mileage from Plaintiffs (who have to return to the dealership each time for another false repair), Chrysler has further damaged and aggrieved Plaintiffs. A recall by Chrysler should have been issued, but Chrysler chose not to in order to save money and burden Plaintiffs and the class.

201.    In some of those *attempts*, Chrysler replaced Plaintiffs' uConnect.  However, each of the replacements suffers from the same defect(s).  In some cases, those replacement units manifested the defect(s) before Plaintiffs could even drive away.

202.    Chrysler has violated the MMWA by failing and/or refusing to honor its written "Basic Limited Warranty" warranty.

203.    As a direct and proximate result of Chrysler's failure and/or refusal to honor its warranty, Plaintiffs and each member of the proposed Classes have been financially damaged.

33

204.    Plaintiffs are authorized to bring this action individually by 15 U.S.C. § 2310(d).

205.    Plaintiffs are also authorized to bring this action as a class action by 15 U.S.C. § 2310(e).

206.    Plaintiffs have provided Chrysler with over half a year in which to fix the described problem. Indeed, to date, Plaintiffs, acting on behalf of the proposed classes, continue to afford Chrysler the opportunity to remedy the above-described defect(s).

207.    Plaintiffs hereby give notice to Chrysler that they are acting on behalf of the proposed Classes, and hereby request Chrysler to honor its warranty; individually, and on behalf of all class members.  Plaintiffs first notice to Chrysler, for the purposes of 15 U.S.C. § 2310(e) was provided on January 17, 2017, when Chrysler's Registered Agent was first served with process in this action.

208.    Plaintiffs and all Class Members are authorized to recover their actual damages by 15 U.S.C. § 2310(d)(1). In this case, those actual damages include the diminished value of the Subject Vehicles.

209.    Plaintiffs and the Class Members are also authorized to recover their reasonable attorneys' fees by 15 U.S.C. § 2310(d)(2).

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, pray for judgment against Chrysler in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for their reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

**COUNT TWO:**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Plaintiffs and All Class Members**
**All Defendants)**

210.    Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

211.    Chrysler is a Merchant with respect to goods of the kind. *See* K.S.A. § 84-2-104(1) and § 84-2-314(1).

212.    Chrysler delivered and/or sold goods to Plaintiffs and the members of the proposed Class.

213.    A fact question remains regarding whether the Subject Vehicles are the "good", the uConnect, or both.  Discovery will be needed to determine the answer to this question.

214.    As detailed more fully above, neither the uConnect systems nor the Subject Vehicles were "merchantable," as described at K.S.A. § 84-2-314(2).

215.    The above-described defect(s) were present when the uConnects and the Subject Vehicles left Defendant's control.

216.    The defect(s) described above are not and were not open and/or obvious, as they are and/or were latent, and, in some cases, would not manifest for some time.  However, in other instances, the defect(s) would manifest almost immediately.

217.    As a direct and proximate result of the defect(s) described herein and Chrysler's failure to remedy the problems, Plaintiffs and all members of the proposed Classes have been financially damaged.

218.    Plaintiffs and the members of the Proposed Classes' damages include, but are not limited to, diminution of value of their Subject Vehicles and of the uConnect systems.

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, pray for judgment against Chrysler in such amounts as are allowed by law and to be determined at trial, for their actual damages, incidental damages, compensatory damages, consequential damages, pre- and post-judgment interest at the greatest rate allowed by law, and for any such further relief as may be just and proper under the circumstances.

**COUNT THREE:**
**VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
**(Plaintiffs and All Class Members**
**All Defendants)**

219.    Plaintiffs incorporate by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

220.    The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions.

221.    Plaintiffs and the members of the proposed Classes have been damaged and are "aggrieved" pursuant to the KCPA as a result of Defendant's conduct.

222.    The KCPA should be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable acts and/or practices. K.S.A. § 50-623; *Williamson v. Amrani*, 283 Kan. 277, 234, 152 P.3d 60, 67 (2007).

223.    Plaintiffs and all members of the proposed Classes are "consumer[(s)]," as defined by K.S.A. § 50-624 (b).

224.    As "consumer[(s)]", under the KCPA, Plaintiffs and each member of the proposed Classes, by definition, have and had less bargaining power than Chrysler, a multi-billion dollar multi-national company.

225.    Chrysler is a "supplier," as defined by K.S.A. § 50-624 (l).

226.    The purchase of the Dart, and of the other Subject Vehicles, was a "consumer transaction," as defined by K.S.A. § 50-624 (c).

227.    Plaintiffs are authorized to bring this action on a class basis by K.S.A. § 50-634(d).

228.    Pursuant to K.S.A. § 50-634(d)(1), Plaintiffs and the members of the proposed Classes are entitled to recover damages for violations that are "specifically proscribed in K.S.A. §§ 50-626, 50-627 and 50-640." Specifically, Plaintiffs and the members of the proposed Classes are entitled to recover financial damages in the form of the diminished value in their vehicles as a result of the defective uConnect systems.

229.    Plaintiffs and the members of the proposed Classes are entitled to recover their costs and reasonable attorneys' fees by K.S.A. § 50-634(e).

230.    Chrysler's violations of § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

a.    Representing, knowingly or with reason to know, that the Subject Vehicles had uses and/or benefits that they do not and did not have, in violation of K.S.A. § 50-626(b)(1)(A);

b.    Representing, knowingly or with reason to know, that the Subject Vehicles were of a particular standard, quality, grade, style, and/or model, when they were of another which differs and/or differed materially from the representation(s), in violation of K.S.A. § 50-626(b)(1)(D);

c.    Representing, knowingly or with reason to know and without a reasonable basis to rely upon, that the Subject Vehicles had uses, benefits, and/or characteristics that they did not, in violation of K.S.A. § 50-626(b)(1)(F);

d.    Willfully using, in oral and/or written representation(s), exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s), in violation of K.S.A. § 50-626(b)(2);

e.    Failing to honor the subject express written warranties while knowing of the inherent defect(s) at issue, in violation of K.S.A. § 50-626(b)(1)(A), 626(b)(2), 626(b)(6), and *Haag v. Dry Basement, Inc.*, 11 Kan. App. 2d 649, 652-54 (Kan. Ct. App. 1987) (affirming district court which held that breach of warranty is a violation of 50-626); and,

     f.   Continuing to sell the Subject Vehicles featuring the defective uConnect system despite having actual knowledge of the problem(s) and defect(s) with the same and that said problem(s) and defect(s) could not be remedied, without disclosing the same prior to the sales, in violation of K.S.A. § 50-626(b)(1)(A), (b)(1)(D), and/or (b)(2).

231.    Chrysler's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

     a.   Selling the uConnect systems at a price which grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers, in violation of K.S.A. § 50-627(b)(2);

     b.   Failing to honor the subject warranties in general while knowing of the inherent defect(s) at issue, in violation of K.S.A. § 50-627(b)(3); and,

     c.   Continuing to sell the Subject Vehicles featuring the defective uConnect systems despite actual knowledge of the problems and defects with same and that said problems and defects cannot be remedied, in violation of K.S.A. § 50-627(b)(1).

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members, pray for judgment against Chrysler in such amount as is allowable by law and to be determined at trial, for their actual damages, pre- and post-judgment interest at the greatest rate allowed by statute, for their reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

232.    Plaintiffs hereby demand a jury trial on all issues so triable.

Respectfully submitted,

/s/    Rex A. Sharp

Rex A. Sharp         KS#12350
Ryan C. Hudson       KS#22986
REX A. SHARP, P.A.
5301 W. 75th Street
Prairie Village, Kansas 66208
T: 913-901-0505
F: 913-901-0419
rsharp@midwest-law.com
rhudson@midwest-law.com

A. Scott Waddell      KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-914-5365
F: 816-817-8500
scott@aswlawfirm.com

Bryce B. Bell         KS#20866
Mark W. Schmitz       KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com

W. Mark Lanier *pro hac vice* pending
Reagan E. Bradford, *pro hac vice* pending
THE LANIER LAW FIRM
6810 FM 1960 West
Houston, TX 77069
12 E. California Ave., Suite 200
Oklahoma City, OK 73104
(713) 659-5200
WML@LanierLawFirm.com
Reagan.Bradford@LanierLawFirm.com

**Attorneys for Plaintiffs**

<u>**CERTIFICATE OF SERVICE**</u>

  The undersigned hereby certifies that a true and accurate copy of the foregoing document was filed with this Court's e-Filing system, and thereby served upon all attorneys of record on March 31, 2017.

           */s/  Rex A. Sharp*