**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| LAWRENCE RASNIC, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 17-2064-KHV |
| FCA US LLC ) | |
| f/k/a CHRYSTLER GROUP LLC, ) | |
| Defendant. ) | |
| _____ ) | |

**MEMORANDUM AND ORDER**

On March 31, 2017, plaintiffs filed their First Amended Class Action Complaint (Doc. #23). Plaintiffs allege that the cars which defendant manufactures have defective dashboard touchscreens which black out and affect drivers' ability to control radio, climate control and navigation systems. See generally id. In particular, plaintiffs assert violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. 2301 et seq., (Claim 1); a state law claim for breach of the implied warranty of merchantability (Claim 2) and violations of the Kansas Consumer Protection Act ("KCPA"), Kan. Stat. Ann. § 50-623 et seq., (Claim 3). Id. This matter comes before the Court on FCA US LLC's Motion To Dismiss First Amended Complaint, Or, Alternatively, To Strike Nationwide Class Allegations (Doc. #30) filed April 24, 2017. For reasons below, the Court sustains defendant's motion in part.

**Legal Standard**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss,

a complaint must contain sufficient factual matter to state a claim which is plausible – not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Court need not accept as true those allegations which state only legal conclusions. See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged – but has not "shown" – that the pleader is entitled to relief. See id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (citing Phillips v. Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

**Procedural And Factual Background**

Lawrence Rasnic and Rebeca Lopez-Rasnic are Kansas residents. First Amended Class

Action Complaint (Doc. #23), ¶¶ 13-14. FCA US LLC (formerly known as Chrysler) is a Delaware limited liability company that manufactures cars. Id., ¶ 16. Highly summarized, plaintiffs allege the following.

On June 17, 2013, plaintiffs purchased a 2013 Dodge Dart – a car that defendant manufactured. Id., ¶ 88. Plaintiffs' car came with a "Uconnect" infotainment system and a Basic Limited Warranty. Id., ¶¶ 90-91. The Basic Limited Warranty extended until the car reached 36,000 miles or three years from the date of purchase, whichever was earlier. Id., ¶ 92. It "cover[ed] the cost of all parts and labor needed to repair any item on [the] vehicle . . . that [was] defective in material, workmanship or factory preparation." Id., ¶ 92, Ex. A at 5.

The Uconnect system allows drivers to control radio, navigation, remote locking, climate control and other features from a touchscreen on the car's dashboard. Id., ¶¶ 19-30. Consumers can purchase this optional feature for Dodge cars which are model years from 2013 through 2016. Id., ¶¶ 28, 32-38. Defendant featured its Uconnect system in many advertisements and maintained a web site to educate consumers about the infotainment system. Id., ¶¶ 38-64. Plaintiffs do not allege that before purchasing their car, they had seen or heard defendant's advertisements or visited its web site.

In approximately April of 2016, plaintiffs' Uconnect system began to freeze and then shut off, leaving a blank, black screen which did not function. Id., ¶¶ 95-98. On April 23, 2016, plaintiffs took their car to a service dealership for repair. Id., ¶ 99. At this time, the warranty had not expired. Id. The dealership could not repair the system, however, it replaced the Uconnect system on May 14, 2016. Id., ¶¶ 102-04. That same day, the replacement system began to randomly black out. Id., ¶ 105. On June 1, 2016, the dealership replaced the system's module; after this, the

screen began to flash back and forth from black to white. Id., ¶¶ 105-107. On June 30, 2016, defendant's specialist said that he had fixed the car, but the screen blacked out again when plaintiffs picked it up. Id., ¶¶ 108-114. In early July, the dealership again replaced the Uconnect, but the new system developed expanded issues. Id., ¶¶ 117-121. The malfunctions prevented plaintiffs from controlling their heating, air conditioning and navigation. Id. Throughout the next few months, the problems persisted as the dealership and defendant tried and failed to repair the Uconnect system three more times. Id., ¶¶ 122-150.

Since 2013, defendant has issued 45 Technical Service Bulletins ("TSBs") to authorized technicians. Id., ¶¶ 3-4. TSBs are instructions on how to repair known defects, and they include a disclaimer prohibiting public dissemination. Id. Plaintiffs allege that three TSBs concerned the Uconnect in their car. Id., ¶¶ 79-84. Defendant issued its first Uconnect-related TSB in July of 2014. Id., ¶ 79.

On January 12, 2017, plaintiffs filed a class action complaint against defendant in the 29th Judicial District of Kansas, Wyandotte County. Notice Of Removal (Doc. #1), ¶ 1. On February 2, 2017, defendant removed the case to this Court. See Doc. #1. On March 31, 2017, plaintiffs filed an amended complaint. First Amended Class Action Complaint (Doc. #23). Plaintiffs assert that by providing defective Uconnect systems, defendant violated the MMWA (Claim 1), the implied warranty of merchantability (Claim 2), and the KCPA (Claim 3). See id., ¶¶ 191-232. Plaintiffs propose to represent statewide and/or national classes of individuals who purchased or leased cars with an 8.4-inch Uconnect infotainment system on or after January 12, 2013. Id., ¶¶ 181.

**Analysis**

Defendant seeks dismissal of plaintiffs' claims under Rule 12(b)(6), Fed. R. Civ. P., or alternatively, to strike nationwide class allegations. Motion To Dismiss (Doc. #30). First, defendant asserts that the Court should dismiss all of plaintiffs' claims because they fail to allege a "specific defect." FCA US LLC's Memorandum In Support Of Its Motion To Dismiss First Amended Class Action Complaint, Or, Alternatively, To Strike Nationwide Class Allegations (Doc. #31) filed April 24, 2017 at 6-8. Second, defendant contends that plaintiffs' MMWA claim fails because they did not allege breach of an express warranty. Id. at 8-11. Third, defendant argues that the alleged Uconnect malfunctions do not breach the Kansas implied warranty of merchantability. Id. at 11-13. Fourth, defendant seeks dismissal of the KCPA claim because plaintiffs filed it after the statute of limitations had expired and fail to allege the necessary elements of a valid claim. Id. at 13-23. Defendant also asks the Court to strike all nationwide allegations because plaintiffs base their claims on Kansas law, which cannot govern out-of-state transactions. Id. at 23-24.

**I.   Failure To Plead A Specific Defect (Claims 1-3)**

Defendant asserts that the Court should dismiss all of plaintiffs' claims because they fail to adequately identify "a specific defect." Id. at 7 (quoting Samarah v. Danek Med., Inc., 70 F. Supp. 2d 1196, 1202 (D. Kan. 1999)). In particular, defendant claims that it cannot properly begin to form its defense because plaintiffs fail to provide adequate notice of the alleged defect in the Uconnect systems. Id. at 6-8.

Plaintiffs allege that defendant's Uconnect system would "randomly black out," "freeze and then shut off, leaving a blank, black screen," "flash back and forth from black to white" and that these malfunctions affected control of "the [h]eating, [a]ir [c]onditioning, and [n]avigation." First

Amended Class Action Complaint (Doc. #23), ¶¶ 95, 98, 108, 121. Although these allegations do not identify the cause of these issues, they give defendant fair notice of the grounds upon which plaintiffs' claims rest. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (pleadings "need only give the defendant fair notice of what the claim is and the grounds upon which it rests"); see also Burnett v. Mortg. Elec. Registration Sys., 706 F.3d 1231, 1235 (10th Cir. 2013) (plaintiff only needs to give fair notice of claim). Because Rule 8, Fed. R. Civ. P., only requires fair notice, plaintiffs do not need to identify the cause of a "specific defect" in their complaint. Id. Defendant attempts to heighten plaintiffs' burden of pleading by relying on inapposite cases which discuss motions for summary judgment and motions to compel, not Rule 12(b)(6) motions, Fed. R. Civ. P. See Memorandum In Support (Doc. #31) at 7 (citing Samarah, 70 F. Supp. 2d at 1202); see also FCA US LLC's Reply In Support Of Its Motion To Dismiss First Amended Class Action Complaint, Or, Alternatively, To Strike Nationwide Allegations (Doc. #33) filed May 30, 2017 at 3 (citing McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002); Turney v. DZ Bank AG Deutsche Zentral Genossenschaftsbank, No. 09-2533-JWL, 2011 WL 1375587, at *4 (D. Kan. Apr. 12, 2011)). Plaintiffs' allegations provide defendant sufficient notice of the purported defect. The Court overrules defendant's motion on this ground.

**II.     Magnuson-Moss Warranty Act, 15 U.S.C. 2301 et seq., (Claim 1)**

Defendant argues that plaintiffs fail to allege sufficient facts to support a claim under the MMWA because they do not allege breach of an express warranty – a necessary element of MMWA claims. Memorandum In Support (Doc. #31) at 8-11. Plaintiffs' warranty covered "the cost of all parts and labor needed to repair" the vehicle if anything was "defective in material, workmanship

or factory preparation." Id. at 9 (quoting Basic Limited Warranty).[1]  Defendant asserts that "it is universally recognized" that material and workmanship warranties like the Basic Limited Warranty do not cover design defects. Id.  Thus, defendant contends that plaintiffs' alleged Uconnect defect cannot breach the warranty.

Viewing the facts in the light most favorable to plaintiffs, the Court finds that they sufficiently allege that defendant breached the warranty by failing to adequately repair the car. Plaintiff's Opposition To FCA US LLC's Motion To Dismiss The First Amended Complaint (Doc. #32) filed May 15, 2017 at 7.  The Kansas Supreme Court has stated that agreements similar to plaintiffs' warranty guarantee repairs and replacement of defective parts – not "performance without malfunction during the term of the warranty." See Voth v. Chrysler Motor Corp., 218 Kan. 644, 648, 545 P.2d 371, 375 (1976).  Plaintiffs' amended complaint alleges approximately nine instances where defendant's vehicle service location failed to fix their Uconnect system. First Amended Class Action Complaint (Doc. #23), ¶¶ 99-153 (multiple instances occurred before warranty expired).  Thus, they adequately allege that defendant breached the warranty by failing to repair plaintiffs' defective Uconnect system.

Further, defendant fails to establish that, as a matter of Kansas law, material and workmanship warranties exclude design defects. Reply (Doc. #33) at 6.  Again, defendant relies on inapposite authority when stating that "it is universally recognized that defects in design are not

---

[1] Although plaintiffs did not attach the Basic Limited Warranty to their amended complaint, the Court may consider the warranty while deciding this motion. See Jacobsen v. Deseret Book Co., 287 F.3d 939, 941 (10th Cir. 2002) (court can "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity"); see also Memorandum In Support (Doc. #31), Ex. 2 (Basic Limited Warranty).

covered by material and workmanship warranties." <u>Memorandum In Support</u> (Doc. #31) at 9.[2]  To prove Kansas law, defendant cites an unpublished Ninth Circuit case applying California law, an order from the Southern District of New York applying New York law and an order from the District of New Jersey deciding a motion for summary judgment under Pennsylvania law.  <u>See</u> <u>id.</u> at 9-10.  These cases do not reflect the relevant Kansas law.  <u>Id.</u> at 9.

Finally, when deciding a Rule 12(b)(6) motion, the Court does not "weigh potential evidence that the parties might present at trial."  <u>Jacobsen</u>, 287 F.3d at 941.  At this early stage of the proceedings, the Court cannot resolve questions of fact concerning what caused the Uconnect malfunctions and whether the warranty covers that type of defect.  Thus, the Court overrules defendant's motion on this ground.[3]

### III. Implied Warranty Of Merchantability, K. S. A. § 82-3-314 (Claim 2)

Defendant asserts that plaintiffs fail to plead a claim for breach of the implied warranty of merchantability because they do not sufficiently allege two elements of a prima facie claim. <u>Memorandum In Support</u> (Doc. #31) at 11-13.  Defendants argue that (1) plaintiffs' alleged injury, the malfunctioning Uconnect system, does not affect the car's merchantability and (2) plaintiffs fail to allege that the defect existed at the time it left the manufacturer.  <u>Id.</u>

Under K.S.A. § 82-2-314(2)(c), a good is merchantable if it is "fit for the ordinary purposes

---

[2] Defendant cites one order from the Court applying Kansas law in support of its proposition that "Kansas law . . . recognizes that a warranty covering 'materials and workmanship' does not extend to design defects."  <u>Reply</u> (Doc. #33) at 6 (citing <u>Messer v. Amway Corp.</u>, 210 F. Supp. 2d 1217, 1227 (D. Kan. 2002)).  Defendant fails to explain how a product liability case discussing negligent warning labels supports its claim concerning warranty law.

[3] Because the Court overrules defendant's motion based on plaintiffs' express breach claim, it does not address plaintiffs' implied warranty claims under the MMWA.

for which such goods are used." Defendant argues that plaintiffs fail to allege that their vehicle is not fit for its ordinary purpose – transportation. Id. Plaintiffs challenge defendant's narrow characterization of a car's ordinary purpose. Memorandum In Opposition (Doc. #32) at 8-14.

The Kansas Supreme Court has held that a car's ordinary purpose is not limited to its "major components affecting transportation." Hodges v. Johnson, 288 Kan. 56, 69, 199 P.3d 1251, 1262 (2009). In Hodges, the Kansas Supreme Court reasoned that a car's merchantability should be based on a reasonable purchaser's expectations and that the warranty covers more on a "late model, low mileage car, sold at a premium price" than an old, used car. Id. at 63-68, 1258-62. It then held that a malfunctioning air conditioning system in a decade-old car breached the warranty of merchantability. Id. Here, plaintiffs allege that an optional feature with an itemized price did not work on a three-year-old car. First Amended Class Action Complaint (Doc. #23), ¶¶ 33, 99-130. The malfunction allegedly affected the car's heating, air conditioning and navigation systems. Id. Further, plaintiffs allege that the flashing touchscreen affected their ability to drive safely because it created a "severe distraction" that diverted their attention from the road.[4] Id., ¶ 70. Because plaintiffs' allegations involve a car's ordinary functions, the Court overrules defendant's motion on this ground.

Defendant also argues that plaintiffs fail to allege facts establishing that the defect existed when the good left the seller's control – a prerequisite to breach of implied warranty of merchantability claims. Hodges, 288 Kan. at 68, 199 P.3d at 1261. With the TSBs, plaintiffs

---

[4] Defendant contends that the Court cannot consider the malfunctions a safety issue. Reply (Doc. #33) at 8. Curiously, defendant cites authority that contradicts its own assertion. See id. (citing MyFord Touch Consumer Lit., 46 F. Supp. 3d 939, 957-59 (N.D. Cal. 2014) (suddenly malfunctioning touchscreen in car creates safety risk)).

support their allegations that the defect existed when the car left defendant's control. First Amended Class Action Complaint (Doc. #23), ¶¶ 79-84. In particular, plaintiffs allege that defendants issued TSBs concerning the Uconnect system for "vehicles built . . . 'on or after February 29, 2012'" and for 2013 model year Dodge Darts. Id., ¶¶ 80-82; see also id., ¶ 88 (plaintiffs purchased 2013 model year Dodge Dart). Because defendant classified malfunctioning vehicles based on the date they were built instead of categories related to post-purchase use such as mileage, this allegation implies that the defect originated during the manufacturing process. Although defendant contests the relevance of some TSBs, when determining a motion to dismiss, the Court accepts all facts alleged as true and does not resolve questions of fact. Erickson, 551 U.S. at 94; see Memorandum In Support (Doc. #31) at 15; see also Reply (Doc. #33). Thus, viewing the facts in the light most favorable to plaintiffs, the Court finds that plaintiffs sufficiently allege a breach of the implied warranty of merchantability claim.

**IV.    Kansas Consumer Protection Act, K. S. A. § 50-623 et seq., (Claim 3)**

Plaintiffs allege that defendant violated the KCPA by committing the following acts:

a.   Representing, knowingly or with reason to know, that the Subject Vehicles had uses and/or benefits that they do not and did not have, in violation of K.S.A. § 50-626(b)(1)(A);

b.   Representing, knowingly or with reason to know, that the Subject Vehicles were of a particular standard, quality, grade, style, and/or model, when they were of another which differs and/or differed materially from the representation(s), in violation of K.S.A. § 50-626(b)(1)(D);

c.   Representing, knowingly or with reason to know and without a reasonable basis to rely upon, that the Subject Vehicles had uses, benefits, and/or characteristics that they did not, in violation of K.S.A. § 50-626(b)(1)(F);

d.   Willfully using, in oral and/or written representation(s), exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s), in violation of K.S.A. § 50-626(b)(2);

  e.  Failing to honor the subject express written warranties while knowing of the inherent defect(s) at issue, in violation of K.S.A. § 50-626(b)(1)(A), 626(b)(2), 626(b)(6), and <u>Haag v. Dry Basement, Inc.</u>, 11 Kan. App. 2d 649, 652-54 (Kan. Ct. App. 1987) (affirming district court which held that breach of warranty is a violation of 50-626);  []

  f.  Continuing to sell the Subject Vehicles featuring defective Uconnect system[s] despite having actual knowledge of the problem(s) and defect(s) with the same and that said problem(s) and defect(s) could not be remedied, without disclosing the same prior to the sales, in violation of K.S.A. § 50-626(b)(1)(A), (b)(1)(D), and/or (b)(2).

  * * *

  [g]  Selling the Uconnect systems at a price which grossly exceeded the price at which similar property or services were readily obtainable in similar transactions by similar consumers, in violation of K.S.A. § 50-627(b)(2);

  [h]  Failing to honor the subject warranties in general while knowing of the inherent defect(s) at issue, in violation of K.S.A. § 50-627(b)(3); and,

  [i]  Continuing to sell the Subject Vehicles featuring the defective Uconnect systems despite actual knowledge of the problems and defects with the same and that said problems and defects cannot be remedied, in violation of K.S.A. § 50-627(b)(1).

<u>First Amended Class Action Complaint</u> (Doc. #23), ¶¶ 230-31.  Generally, plaintiffs allege three types of KCPA claims: (1) claims based on defendant's breach of its express warranty; (2) claims based on defendant's misrepresentations; and (3) claims based on unconscionable acts.  <u>See</u> <u>Memorandum In Opposition</u> (Doc. #32) at 19-20.

  Allegations under the KCPA must be pled with particularity as required by Rule 9(b), Fed. R. Civ. P.  <u>Gonzalez v. Pepsico, Inc.</u>, 489 F. Supp. 2d 1233, 1247 (D. Kan. 2007) (citations omitted).  Rule 9(b) aims to afford parties with fair notice of the facts upon which plaintiffs base fraud claims.  <u>See</u> <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d 1202, 1236 (10th Cir. 2000). It requires that plaintiffs allege the who, what, when, where and how of the alleged fraud.  <u>U.S. ex.</u>

rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 726-27 (10th Cir. 2006). "Allegations of fraud may be based on information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992). Further, the Court must read the requirements of Rule 9(b) in conjunction with Rule 8, which calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial justice." Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997).

  A.  Express Warranty (Claim 3(e))

Plaintiffs allege that defendant violated the KCPA when it breached its Basic Limited Warranty agreement by failing to repair the Uconnect system. First Amended Class Action Complaint (Doc. #23), ¶ 230(e) (citing Haag v. Dry Basement, Inc., 11 Kan. App. 3d 649, 732 P.2d 392 (1987)). Defendant argues that the KCPA's three-year statute of limitations bars the express warranty claim because plaintiffs purchased the car on June 17, 2013 and did not file suit until January of 2017. Memorandum In Support (Doc. #31) at 13-16 (citing K.S.A. § 60-512 and First Amended Class Action Complaint (Doc. #23), ¶ 88). In response, plaintiffs assert that defendant should be equitably estopped from asserting the statute of limitations defense. Memorandum In Opposition (Doc. #32) at 16-18.

When assessing a statute of limitations argument in a motion to dismiss, the question before the Court is whether "the dates given in the complaint make clear that the right sued upon has been extinguished." Aldrich v. McCulloch Prop., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980). To resolve a statute of limitations issue on a motion to dismiss, the Court must find that the face of the complaint makes the answer "apparent." Dummar v. Lummis, 543 F.3d 614, 619 (10th Cir. 2008).

In Kansas, equitable estoppel exists when a party by its acts, representations or admissions induces another party to believe certain facts exist upon which that party detrimentally relies and acts. Rockers v. Kan. Turnpike Auth., 268 Kan. 110, 116, 991 P.2d 889, 894 (1999) (quoting United Am. State Bank & Tr. v. Wild W. Chrysler Plymouth, 221 Kan. 523, 527, 561 P.2d 792, 795 (1977)); Turon State Bank v. Bozarth, 235 Kan. 786, 788, 684 P.2d 419, 422 (Kan. 1984). Estoppel by silence requires that the estopped party have (1) a duty to speak and (2) an intent to mislead "or at least a willingness that others should be deceived." Turon State Bank, 235 Kan. at 789, 684 P.2d at 423 (interior quotation omitted). Accordingly, "equitable estoppel generally involves questions of fact." Dunn v. Dunn, 47 Kan. App. 2d 619, 639, 281 P.3d 540, 555 (2012).

Defendant argues that plaintiffs fail to sufficiently allege equitable estoppel with particularity as required by Rule 9(b). Memorandum In Support (Doc. #31) at 15. Plaintiffs, however, allege both elements of estoppel by silence. Specifically, plaintiffs allege that defendant had an affirmative duty to speak after making statements to consumers through advertisements and updating plaintiffs on the status of their Uconnect repairs. First Amended Class Action Complaint (Doc. #23), ¶¶ 9, 50, 105, 112, 119. Plaintiffs also allege that defendant prohibited repair technicians from disseminating TSBs to the public. Id., ¶ 4. These TSBs may have made plaintiffs aware of the Uconnect defects earlier. Further, plaintiffs suggest that defendant intended to mislead consumers to avoid a costly recall campaign. Id., ¶¶ 5-6; see Scheidt, 956 F.2d at 967 (particularity standard relaxed when defendant has exclusive knowledge of facts). Viewing the facts in the light most favorable to plaintiffs, the Court overrules defendant's motion on these grounds because it is not

"apparent" that the statute of limitations bars plaintiffs' claim. Dummar, 543 F.3d at 619.[5]

      B.      Misrepresentation (Claims 3(a)-(d), (f))

Plaintiffs allege that defendant violated the KCPA by making false representations when it engaged in a marketing campaign that "expressly and/or implicitly represented, repeatedly, that the Uconnect would function." Memorandum In Opposition (Doc. #32) at 21. Defendant asserts that the Court should dismiss these claims because plaintiffs fail to allege reliance on the alleged false representations. Memorandum In Support (Doc. #31) at 17-22.

To recover based on a KCPA claim, plaintiffs must establish a "casual connection" between the alleged violation and damages suffered. Finstad v. Washburn Univ. Of Topeka, 252 Kan. 465, 474, 845 P.2d 685, 692 (1993). Plaintiffs generally demonstrate this causal connection through reliance on defendant's misrepresentations. Here, plaintiffs allege that defendant engaged in a nationwide advertising campaign promoting Uconnect. First Amended Class Action Complaint (Doc. #23), ¶¶ 38-64. Plaintiffs do not allege that they saw or were aware of defendant's advertisements before they purchased their car. Accordingly, they have not sufficiently alleged reliance on the supposedly false statements. The Court dismisses plaintiffs KCPA claims based on defendant's nationwide advertising claim, namely Claims 3(a)-(d), (f).

      C.      Unconscionable Acts (Claims 3(g)-(i))

In Claims 3(g) through (i), plaintiffs allege that defendant violated Section 50-627 of the KCPA, which prohibits unconscionable acts or practices in connection with consumer transactions.

---

[5] The Court rejects plaintiffs' argument to toll the statute of limitations based on fraudulent concealment. Memorandum In Opposition (Doc. #32) at 14. In Kansas, the fraudulent concealment doctrine is limited to claims "grounded in fraud on [their] face." Bonin v. Vannaman, 261 Kan. 199, 207, 929 P.2d 754, 762 (1996). Kansas courts have distinguished KCPA claims from fraud claims. Haag, 11 Kan. App. 2d at 651, 732 P.2d at 394.

Defendant asserts that plaintiffs fail to sufficiently allege unconscionable acts because they do not allege unequal bargaining power. Memorandum In Support (Doc. #31) at 23. Plaintiffs argue that they do not need to plead unequal bargaining power because they allege per se violations of Section 50-627. Memorandum In Opposition (Doc. #32) at 27.

Unconscionable acts under the KCPA must have "'some element of deceptive bargaining conduct present as well as unequal bargaining power.'" State ex rel. Stovall v. ConfiMed.com, L.L.C., 272 Kan. 1313, 1321, 38 P.3d 707, 713 (Kan. 2002) (quoting Willman v. Ewen, 230 Kan. 262, 266, 634 P.2d 1061, 1064 (1981)). Plaintiffs argue that because they allege per se violations, i.e. conduct listed in Subsections 50-627(b)(1)-(b)(6), they do not need to allege unequal power or deceptive bargaining conduct. Memorandum In Opposition (Doc. #32) at 27. Sections 50-627(b)(1)-(b)(6) provide examples of unconscionable acts. State ex rel. Stovall, 272 Kan. at 1320, 38 P.2d at 712. The legislature's enumeration of these examples does not diminish plaintiffs' burden to allege facts supporting their claims. In other words, plaintiffs' citation to a specific section of the KCPA does not relieve them of their duty to allege unequal bargaining power. Further, plaintiffs fail to cite any authority that supports their proposition that they do not need to allege unequal power or deceptive bargaining conduct.[6]

Alternatively, plaintiffs attempt to allege unequal bargaining power by stating that "[p]laintiffs and each member of the proposed Classes, by definition, have and had less bargaining power than Chrysler, a multi-billion dollar multi-national company." First Amended Class Action

---

[6] Plaintiffs seem to rely on Haag for the proposition that breaching an express warranty is a per se violation of Section 50-627. Memorandum In Opposition (Doc. #32) at 28. However, in Haag, the court explicitly declined to analyze unconscionability under Section 50-627. Haag, 11 Kan. App. 2d at 653, 732 P.2d at 395.

Complaint (Doc. #23), ¶ 224.  However, Kansas courts have rejected similar arguments, stating that a supplier's size and expertise in its industry do not alone create unequal bargaining power.  See Louisburg Bldg. & Dev. Co. v Albright, 45 Kan. App. 2d 618, 647, 252 P.3d 597, 617 (2011) (refusing to find unequal power between construction company and consumer unfamiliar with construction because "finding of unconscionability on this basis would likely render all construction contracts unconscionable"); see also Cornelison v. Denison State Bank, 315 P.3d 278 (table), No. 108,427, 2014 WL 37682, at *15 (Kan. Ct. App. Jan. 3, 2014).  Plaintiffs' allegation that defendant has greater financial resources than they do does not alone create unequal bargaining power.  Thus, the Court dismisses Claims 3(g) through 3(i) because plaintiffs fail to allege unconscionability.

**V.    Nationwide Class**

Plaintiffs propose that they represent four alternative classes:

Class A: All natural persons who purchased and/or leased a Subject Vehicle manufactured by Defendant FCA US LLC in the State of Kansas on or after January 12, 2013.

In the alternative to Class A, Class B: All natural persons who purchased and/or leased a Dodge Dart manufactured by Defendant FCA US LLC that contained an 8.4 inch [Uc]onnect "infotainment" system in the State of Kansas on or after January 12, 2013.

Class C: All natural persons who purchased and/or leased a Subject Vehicle manufactured by Defendant FCA US LLC on or after January 12, 2013.

In the alternative to Class C, Class D: All natural persons who purchased and/or leased a Dodge Dart manufactured by Defendant FCA US LLC that contained an 8.4 inch [Uc]onnect "infortainment" system on or after January 12, 2013.

First Amended Class Action Complaint (Doc. #23), ¶ 181.  Defendant moves to strike plaintiffs' nationwide allegations, i.e. proposed Classes C and D, because they have not "stated any valid claim

for those consumers who entered into a transaction outside of Kansas." Memorandum In Support (Doc. #31) at 24. In other words, defendant argues that plaintiffs base their claims on Kansas law, namely the Kansas UCC and KCPA, which does not govern out-of-state transactions. Id. at 23-24 (citing First Amended Class Action Complaint).

In response, plaintiffs contest the timing of defendant's motion, not its substance. Arguing that the Court should not resolve class certification issues until the parties have engaged in discovery, plaintiffs rely on the general presumption that "Rule 12(f) motions to [s]trike class allegations are extremely disfavored." Memorandum In Opposition (Doc. #32) at 29-30 (citing non-binding authority from the District of Colorado, District of New Mexico and Western District of Oklahoma). Despite their reliance on this presumption, plaintiffs admit that the Tenth Circuit has not spoken on this issue. Id. at 29. Further, even if the Tenth Circuit had an established presumption, plaintiffs cannot deny that district courts still maintain authority to strike class allegations when the pleadings present "plain" issues that will prevent class certification. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982). For example, in Pilgrim v. Univ. Health Card, LLC, the Sixth Circuit affirmed a district court order striking class allegations because "different laws would govern the class members' claims." 660 F.3d 943, 946 (6th Cir. 2011). In part, the appellate court approved the district court's ruling on the pleadings because discovery would not cure the "largely legal" defects with the nationwide allegations. Id. at 949.

Here, Claims 1 and 2 rest on Kansas laws that are explicitly limited to "transactions bearing an appropriate relation to [Kansas]" and consumer transactions in Kansas. K.S.A. § 84-1-301(b); K.S.A. §§ 50-624(c), 50-638(a); see First Amended Class Action Complaint (Doc. #23), ¶¶ 191-231. Proposed Classes C and D attempt to extend Kansas law to out-of-state transactions. However, these

-17-

laws, by their own terms, have no extraterritorial effect. K.S.A. § 84-1-301(b); K.S.A. §§ 50-624(c), 50-638(a); see also State v. Holcomb, 85 Kan. 178, 116 P. 251, 252 (1911).  Thus, plaintiffs' proposed out-of-state class members could not join in Claims 1 and 2.

Plaintiffs' nationwide MMWA claim faces a similar barrier.  Under the MMWA, plaintiffs attempting to recover for breach of a "limited" warranty or implied warranty must rely on applicable state laws.  See 15 U.S.C. §§ 2301(7), 2301(15), 2304(d), 2310(d); see also Sipe v. Workhorse Custom Chassis, 572 F.3d 525, 530 (10th Cir. 2009) ("MMWA grants holder of a limited warranty a federal cause of action . . . under applicable state law"); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (10th Cir. 2008) (MMWA claims "stand or fall" with state law claims); Schimmer v. Jaguar Cars, 384 F.3d 402, 405 (7th Cir. 2004) (MMWA "borrow[s] state law causes of action").  Here, plaintiffs base their MMWA claim on defendant's breach of the Basic Limited Warranty and an implied warranty.  See Memorandum In Opposition (Doc. #32), at 6-8.  Accordingly, the claim relies on state law.  If a nationwide class seeks relief under the MMWA as stated in Claim 3, the Court would potentially have to apply different state laws to each respective plaintiff's claim.  Differences in state laws governing each claim would create manageability concerns prohibiting class certification.

Plaintiffs do not explain how delaying this decision and allowing further discovery could remedy the defects in their nationwide allegations.  Pilgrim, 660 F.3d at 949.  Further, plaintiffs' reliance on a general presumption against striking class allegations at the pleadings stage does not justify the additional expense of discovery concerning nationwide claims unsupported by law.  Accordingly, the Court strikes plaintiffs' nationwide allegations, namely those set forth through proposed Classes C and D.

**IT IS THEREFORE ORDERED** that FCA US LLC's Motion To Dismiss First Amended Complaint, Or, Alternatively, To Strike Nationwide Class Allegations (Doc. #30) filed April 24, 2017 is **SUSTAINED in part**.  The Court dismisses plaintiffs' Claims 3(a) through (d) and 3(f) through (i) and strikes plaintiffs nationwide complaints.

**IT IS FURTHER ORDERED** that FCA US LLC's Motion To Dismiss First Amended Complaint, Or, Alternatively, To Strike Nationwide Class Allegations (Doc. #30) filed April 24, 2017 is **OVERRULED** as to all remaining claims.

The following claims remain: Claim 1, Claim 2 and Claim 3(e).

Dated this 15th day of December, 2017 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge