# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LAWRENCE RASNIC, et al.,      )
                                       )

            Plaintiffs,     )
                                       )

v.                             )     **Case No. 17-2064-KHV-GEB**
                                       )

FCA US LLC,              )
                                       )

            Defendant.     )
_____)

## MEMORANDUM AND ORDER

This matter is before the Court on defendant FCA US LLC's Motion to Compel Production of Plaintiffs' Vehicle for a Private, Non-Destructive Inspection (**ECF No. 72**). Having reviewed the briefs of the parties (ECF Nos. 72, 73, 74, 76, 77), the Court is prepared to rule. For the reasons set forth below, Defendant's motion is **GRANTED in part**.

## I.    Background[1]

Plaintiffs Lawrence Rasnic and Rebeca Lopez-Rasnic purchased a new 2013 Dodge Dart automobile in June 2013, which was manufactured by defendant FCA US LLC, formerly known as Chrysler Group LLC. (First Amended Complaint, ECF No. 23 ¶¶ 16, 88.) Less than three years later, Plaintiffs noticed issues with the car's uConnect

---

[1] The information recited in this section is taken from the pleadings (see Pls.' Class Action Petition, ECF No. 1-1; First Amended Class Action Complaint, ECF No. 23; Answer, ECF No. 42); from District Judge Kathryn H. Vratil's Memorandum and Order ruling on the motion to dismiss (ECF No. 39), and from the briefs regarding the Motion to Compel (ECF Nos. 72-74, 76, 77). This background information should not be construed as judicial findings or factual determinations unless specifically stated.

touchscreen "infotainment" system, including the touchscreen freezing and randomly blacking out. (*Id.* ¶ 95-99.) Plaintiffs sought service at the local dealership, and the touchscreen was eventually replaced. However, the replacement touchscreen developed the same problem. (*Id.* ¶¶ 103-104.) After the vehicle's touchscreen was replaced a second time, Plaintiffs claim the problems magnified and began impacting other mechanisms in the car, including the heating and air conditioning and the navigation systems. (*Id.* ¶ 121.) After multiple attempted repairs, at least four replacement touchscreens, and numerous service visits, Plaintiffs continue to experience problems with the uConnect touchscreen in their Dodge Dart. (*See generally id.*, and ¶ 153.)

Plaintiffs contend other owners of Darts, and other Dodge vehicles of model years 2013 and newer, have experienced strikingly similar problems. (*Id.* at 24-28.) They propose to represent statewide and/or national classes of individuals who purchased or leased cars with an 8.4-inch uConnect infotainment system on or after January 12, 2013. (*Id.* ¶ 181.) According to Plaintiffs, by providing vehicles with the defective infotainment systems, Defendant violated the Magnuson-Moss Warranty Act ("MMWA")[2] (Claim 1); breached the implied warranty of merchantability (Claim 2); and violated the Kansas Consumer Protection Act[3] (Claim 3). (*Id.* ¶1; *id.* at 32-38; *see also* Mem. and Order, ECF No. 39.)

Along with multiple affirmative defenses claimed, Defendant denies any uConnect system is defective and contends the alleged defect does not "substantially impair the use,

---

[2] 15 U.S.C. § 2301 et seq.
[3] K.S.A. § 50-623 et seq.

value, or safety of the vehicles." (ECF No. 42 at 22.)   Defendant further argues, in the event it is found to owe Plaintiffs or any putative class member damages for any defect, it is entitled to a setoff for the plaintiffs' use of their vehicles.

Plaintiffs initially filed their case in the Wyandotte County District Court of Kansas. (Petition, ECF No. 1-1.)   Defendant timely removed the case to this federal court, citing diversity jurisdiction (Notice of Removal, ECF No. 1), and Plaintiffs filed a First Amended Complaint. (ECF No. 23.)   Defendant then filed a motion to dismiss Plaintiffs' complaint on multiple grounds (ECF No. 30).   The district court dismissed Plaintiffs' KCPA claims based on Defendant's nationwide advertising, namely Claims 3(a)-(d) and (f). (Mem. and Order, ECF No. 39, at 14.)   The district court also dismissed Plaintiffs' "unconscionable acts" KCPA Claims 3(g) through 3(i), because Plaintiffs failed to allege unconscionability (*Id*. at 16), and struck Plaintiffs' nationwide allegations (*Id*. at 18).   The following claims remain: the MMWA claim (Claim 1), breach of the implied warranty of merchantability (Claim 2), and the KCPA express warranty claim (Claim 3(e)).   (*Id*. at 19.)

## II.     Motion to Compel Production (ECF No. 72)

Arguing Plaintiffs' vehicle is the "most crucial piece of evidence in this case," Defendant sent its Request for Production No. 62 on February 16, 2018, asking Plaintiffs to produce their vehicle "for a private inspection by FCA US at an FCA US authorized dealership chosen by" Plaintiffs, within 90 days of Plaintiffs' response to interrogatories seeking information about the nature of the defect.   (ECF No. 74-2 at 2.)   In Plaintiffs'

response to the RFP, dated March 19, 2018, Plaintiffs answered without objection, stating, "We will make our vehicle available for same." (ECF No. 74-2 at 2.)

On April 2, 2018, Defendants sent a letter to Plaintiffs which proposed specific arrangements for the inspection, including:

(1) Plaintiffs will select the FCA US authorized dealership where the inspection will take place. On a mutually agreeable date, Plaintiffs will drop off the vehicle at the designated dealership by 9:00 a.m. and the vehicle will be available for pick up by the close of business.

(2) FCA US will provide Plaintiffs with a rental vehicle for the day of the inspection.

(3) FCA US will also take a short test drive of each vehicle. The test drive will take place under normal driving conditions and Plaintiffs will be reimbursed for mileage using standard reimbursement rates or, at their election, have $10 worth of gas put in the vehicle.

(4) Since the inspection will be non-destructive, FCA US will conduct the inspection outside the presence of Plaintiffs and their representatives.

(ECF No. 74 ¶ 6; ECF No. 74-3 at 4-5.) In an email exchange dated April 6, 21018, Plaintiffs responded they were unwilling to permit a private inspection, and they "intend[ed] on having a representative present the entire day and a second person videotaping the entire inspection." (ECF No. 74-4 at 2.) The parties then conferred by telephone on April 10, and apparently discussed the equipment and general process to be used by Defendant during the inspection (*see* ECF No. 74 ¶¶ 9-11), but were unable to agree upon the terms of the inspection. Defendant filed the instant motion. (ECF No. 72.)

## A.    Duty to Confer

Throughout the briefing, the parties demonstrated their attempts to resolve their differences through both written correspondence and telephonic discussion. Therefore, the Court is satisfied they have sufficiently conferred as required by D. Kan. Rule 37.2 and Fed. R. Civ. P. 37(a)(1).

## B.    Discussion

Defendant contends the privacy of its inspection is warranted under both work product and consulting expert protections. Additionally, it argues fairness requires that it be given the opportunity to "examine, without intrusion, critical evidence in the case." (ECF No. 73 at 2.) Defendant maintains it discussed by telephone with Plaintiffs its plan to connect a wiTECH[4] device to the vehicle to download its diagnostic history, and test drive the vehicle to test the functionality of the uConnect system. (ECF No. 77 at 2.) Defendant argues "every FCA US-authorized dealership has [a wiTECH] and Plaintiffs can obtain" the same equipment for their own testing. (*Id.*)

Plaintiffs do not agree the inspection of their vehicle invokes either the work product or consulting expert protections. Additionally, they contend because Defendant has a proprietary relationship with the uConnect system, it is conceivable Defendant has special access or tools at its disposal to make changes to the system, unbeknownst to Plaintiffs. Although they complain Defendant refused to disclose their testing methods in

---

[4] Plaintiffs do not mention the wiTECH device in their briefing, and Defendant only describes it in general terms as a device "pod" which apparently connects to the vehicle in some fashion and is used to "download the diagnostics data" from the auto. (*See* ECF No. 74 ¶ 11.)

advance, Plaintiffs did not respond to Defendant's claims of discussing the same during their April 10th telephone call. Essentially, Plaintiffs argue there is no way for them to be sure the testing is truly non-destructive, or to ensure any loss of data as a result of Defendant's inspection. Plaintiffs contend the case law on which Defendant relies involves simpler, tangible items, and not complex consumer electronic devices. In their Response to Defendant's motion, Plaintiffs propose either their representative attend and document Defendants' inspection, or—for the first time—suggest a joint inspection by a neutral expert, performed pursuant to a jointly-submitted protocol. (ECF No. 76 at 5-6.)

### 1. Legal Standards

Trial "[c]ourts are given broad discretion to control and place appropriate limits on discovery."[5] And "a magistrate [judge] is afforded broad discretion in the resolution of non-dispositive discovery disputes."[6] In exercising this discretion, the Court reviews the discovery standards outlined in Fed. R. Civ. P. 34 and 26, which the parties agree provide the primary backdrop for review of Defendant's request.

### a. Overview of Applicable Rules

At the outset, implicated in a request for inspection is Federal Rule of Civil Procedure 34. Rule 34 permits a party to request another party "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" "any

---

[5] *Semsroth v. City of Wichita*, No. 06-2376-KHV-DJW, 2007 WL 2287814, at *1 (D. Kan. Aug. 7, 2007) (citing *Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan.1990) (discussing whether to stay discovery).

[6] *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2014 WL 61799, at *1 (D. Kan. Jan. 8, 2014) (citing *A/R Roofing, L.L. C. v. Certainteed Corp.*, 2006 WL 3479015, at *3 (D. Kan. Nov. 30, 2006) (other internal citations omitted).

designated tangible thing" in the responding party's possession, custody or control."[7]   A request must describe with particularity the item to be inspected, and specify a reasonable time, place, and manner for the inspection.[8]   The responding party must respond in writing within thirty days of being served with the request, by either stating the inspection will be permitted, or by stating its objections with specificity.[9]   The party seeking an inspection under Rule 34 may move to compel an inspection when the other party "fails to respond that inspection will be permitted—or fails to permit inspection—as requested."[10] "Objections that a responding party fails to initially raise in the answer or response to the discovery request are deemed waived."[11]

Although the parties do not question the relevancy of Defendant's request, any request served pursuant to Rule 34 is explicitly governed by the scope of discovery outlined in Rule 26(b).  This rule permits discovery of "any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" and "need not be admissible in evidence in order to be discoverable."[12]

### b.    Work Product and Consulting Expert Protections

As a part of its limits on discovery, Rule 26(b) outlines protections for both attorney work product and specific protections surrounding experts.  Analysis of the work

---

[7] Fed. R. Civ. P. 34(a).
[8] Fed. R. Civ. P. 34(b)(1).
[9] Fed. R. Civ. P. 34(b)(2).
[10] Fed. R. Civ. P. 37(a)(3)(B)(iv).
[11] *Hopkins v. Wilson County Bd. of Comm'rs*, No. 15-2072-CM-TJJ, 2018 WL 3536247, at *3 (D. Kan. July 23, 2018).
[12] Fed. R. Civ. P. 26(b)(1); *see Violetta v. Steven Bros. Sports Mgmt., LLC*, No. 16-1193-JTM-GEB, 2017 WL 3675090, at *7 (D. Kan. Aug. 24, 2017).

product doctrine is governed by the federal standard outlined in Rule 26(b)(3).[13] Pursuant to the work product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."[14]  And, even if the court orders such materials to be produced, "it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."[15]

Similarly, Rule 26(b)(4) provides protection for communications between a party's attorney and its expert witnesses,[16] as well as protection for "facts known or opinions held" by a non-testifying, consulting expert.[17]

### c.      Appropriateness of Testing

The parties do not dispute the general propriety of Defendant's request to inspect Plaintiffs' vehicle, and the Court finds such a "hands-on inspection and testing is critical to a fair trial and due process" for Defendant."[18]  But because the appropriateness of the

---

[13] *Kannaday v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (citing *Frontier Refining, Inc. v. Gorman–Rupp Co*., 136 F.3d 695, 702 n. 10 (10th Cir. 1998) (stating that "the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)") (internal citation omitted)); *see also Herrmann v. Rain Link, Inc*., No. 11-1123-RDR, 2012 WL 1207232, at *8 (D. Kan. Apr. 11, 2012) ("federal law governs work-product issues").

[14] Fed. R. Civ. P. 26(b)(3)(A).

[15] Fed. R. Civ. P. 26(b)(3)(B).

[16] Fed. R. Civ. P. 26(b)(4)(C).

[17] Fed. R. Civ. P. 26(b)(4)(D). *See Hale v. Emporia State Univ*., No. 16-4182-DDC-TJJ, 2018 WL 953110, *11 (D. Kan. Feb. 20, 2018) (finding a non-testifying expert's report not discoverable under Fed. R. Civ. P. 26(b)(4)(D)).

[18] *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc*., 139 F.3d 912, 1998 WL 68879 (10th Cir. 1998) (unpublished table decision) (upholding dismissal of plaintiffs' case as spoliation sanction; quoting the district court's conclusion that "hands-on inspection and testing is critical to a fair trial and due process for the Defendants").

testing is a starting point, a brief discussion is prudent. Although neither this District nor the Tenth Circuit Court of Appeals has directly addressed the issue, other districts have analyzed whether to permit testing or inspection differently depending upon whether the testing is considered to be destructive or non-destructive.[19]

Several federal district courts have applied a four-factor test to determine whether to permit destructive testing.[20] Here, however, Defendant argues it wishes to utilize only non-destructive testing. In such instances, courts appear more likely to use a balancing analysis: that is, the courts "balance the respective interests [of the parties] by weighing the degree to which the proposed inspection will aid in the search for truth against the burdens and dangers created by the inspection."[21]

---

[19] *Ramos v. Carter Exp. Inc.*, 292 F.R.D. 406, 408-409 (S.D. Tex. 2013) (collecting cases involving destructive testing and those involving non-destructive testing).

[20] *Id.* at 408 (collecting cases involving destructive testing, including *Bostic v. Ammar's, Inc.*, No. 03–146–ART, 2011 WL 251009, at *3 (E.D. Ky. Jan. 26, 2011); *Conway v. Kaz Inc.*, No. 09–CV–10065–DT, 2009 WL 3698561, at *2 (E.D. Mich. Nov. 4, 2009); *Guerrero v. Gen. Motors Corp.*, No. 1:06–cv–01539–LJO–SMS, 2007 WL 3203014, at *2 (E.D. Cal. Oct. 29, 2007); and *Mirchandani v. Home Depot, U.S.A., Inc.*, 235 F.R.D. 611, 613-14 (D. Md. 2006)). In *Ramos*, 292 F.R.D. at 408, the court outlined the four factors as follows: "1) [w]hether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; 2) [w]hether the non-movant's ability to present evidence at trial will be hindered, or whether the non-movant will be prejudiced in some other way; 3) [w]hether there are any less prejudicial alternative methods of obtaining the evidence sought; and 4) [w]hether there are adequate safeguards to minimize the prejudice to the non-movant, particularly the movant's ability to present evidence at trial. The analysis of the third factor—whether there are any less prejudicial alternative methods of obtaining the evidence sought—necessarily involves inquiring into 'whether there are any non-destructive alternative methods of testing.'" (quoting *Mirchandani*, 235 F.R.D. at 616 (other internal citations omitted).

[21] *Ramos*, 292 F.R.D. at 409 (citing *Hunley v. Glencore Ltd., Inc.*, No. 3:10–CV–455, 2013 WL 1681836, at *3 (E.D. Tenn. April 17, 2013) (quoting *Scruggs v. Int'l Paper Co.*, 278 F.R.D. 698, 700 (S.D. Ga.2012)).

### d. Privacy

After a decision is made that testing may occur, the distinction between destructive and non-destructive testing becomes even more meaningful when determining whether an opposing party, or its representative, is permitted to be present during the testing. Despite a lack of binding case law in this District or Circuit, a 2013 decision from the Southern District of Texas provides a persuasive collection of federal district court decisions from across the country, and outlines a "clear distinction" developing

> between cases involving destructive testing and those involving non-destructive testing. Where courts have ordered materials to be subject to destructive testing, they almost unanimously allow the opposing party to bear witness to the inspection and testing, either in person or via another avenue, such as videotaping. In contrast, when courts compel production of materials for non-destructive testing, they habitually refuse to allow the presence of an opposing party.[22]

Courts determining whether to permit an opposing party to observe an inspection tend to balance one party's desire for privacy versus the potential harm it could cause—much like the balancing test used to determine whether to allow the testing at the outset. As a part of this examination, courts have scrutinized the description of the planned tests,[23]

---

[22] *Ramos*, 292 F.R.D. at 409 (internal cites omitted; collecting cases from the S. D. Florida, N. D. Indiana, E.D. Louisiana, E.D. Texas, and others).

[23] *See, e.g., Davidson v. Apple*, No. 5:16-cv-0492-LHK, ECF No. 162 (N. D. Cal., San Jose Division, Dec. 14, 2017) (unpublished) (focusing on Apple's failure to describe its planned tests on subject iPhones); *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2014 WL 3610789, at *7 (N.D. Tex. July 22, 2014) (discussing safeguards built into the testing protocol for Galaxy S mobile phones and requiring specific physical testing protocol be utilized); *Blundon v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 11CV990S, 2012 WL 5473069, at *4 (W.D.N.Y. Nov. 9, 2012), objections overruled, No. 11-CV-990S, 2013 WL 104932 (W.D.N.Y. Jan. 8, 2013) (discussing the specialized tools and equipment used for testing tires and rims); *Hajek v. Kumho Tire Co.*, No. 4:08CV3157, 2009 WL 2229902, at *3 (D. Neb. July 23, 2009) (discussing the special equipment and laboratory facility to be used for testing).

any proprietary tests belonging solely to the testing party,[24] and assurances by the testing party that its inspection will truly be non-destructive, ensuring integrity of the evidence for trial.[25]  And, although not all courts believe Rule 26(b) is implicated,[26] many courts consider how the inspection—and its potential observation—implicate the work product or consulting expert protections of the testing party.[27]  Prejudice to each party arising from observed testing is compared with prejudice resulting from a private inspection.

## 2. Analysis

As referenced above, this issue is a novel one in this District and apparently the Tenth Circuit.  The sole Kansas federal case cited by the parties is largely distinguishable and provides little direction.  In *G.D. v. Monarch Plastic Surgery, P.A.*,[28] the defendant physician disposed of a computer by leaving it on the curb at his home.  When a non-

---

[24] *See Davidson v. Apple*, No. 5:16-cv-0492-LHK, ECF No. 162, at 4 (N. D. Cal., San Jose Division, Dec. 14, 2017) (unpublished) (acknowledging plaintiffs' concerns that Apple may take unfair advantage of its opportunity to test the iPhones).

[25] *See id.* (the court was not satisfied "that allowing secret testing will assure no data is destroyed or altered or deleted"); *Ramos*, 292 F.R.D. at 411 (reviewing cases; offering procedures the court may impose to prevent any loss or damage to the evidence while in the custody of defendant or another third party); *Galitski*, 2014 WL 3610789, at *8 (ensuring the testing is "calculated to ensure the integrity of the testing process").

[26] *See Davidson*, No. 5:16-cv-0492-LHK, ECF No. 162, at 4 ("The court is not convinced that the work product doctrine is implicated in the testing of plaintiff's iPhones.  What the parties do with the results is probably work product, but what comes "out" of those instruments is just data or information.")

[27] *See, e.g., Cottrell v. Dewalt Indus. Tool Co.*, No. 09-cv-5306, 2009 WL 5213876, *2 (N.D. Ill. Dec. 29, 2009) (analyzing the work product and consulting expert protections and permitting defendant to conduct private, non-destructive testing); *Hajek*, 2009 WL 2229902, at *5 (permitting non-destructive testing, and finding that the presence of opposing counsel would violate work product doctrine); *Shoemaker v. Gen. Motors Corp.*, 154 F.R.D. 235, 236 (W.D. Mo. 1994) (allowing opposing counsel to attend defendant's inspection would "reveal protected attorney work product and consulting expert information" and "intrude impermissibly on the development of defendant's case").

[28] *G.D. v. Monarch Plastic Surgery, P.A.*, 239 F.R.D. 641 (D. Kan. 2007).

party retrieved and repaired the computer, it discovered the discarded computer contained confidential patient records, as well as clinic employee data. Plaintiffs filed suit against the physician and his medical group, contending wrongful disclosure of confidential medical information.[29] Plaintiffs sought to compel production of the computer itself, in order to "inspect, test and evaluate" its operation. Plaintiffs also sought access to the non-party patient records to demonstrate defendant's recklessness with the confidential information.[30] The court analyzed the defendants' objections on relevancy, overbreadth and undue burden, and granted plaintiffs' motion, but excluded the production of files or records related to non-party patients and defendants' employees.[31] As suggested by plaintiffs in their motion, the court appointed a neutral computer expert to inspect the computer, outside the presence of plaintiffs, and to provide a "mirror image" of the hard drive to the defendants and the court.[32] The neutral expert was also ordered to provide a summary of the computer's operating system and software applications to both parties.[33] Unlike the primary issue in the present case, neither party in *G.D.* presented arguments regarding the presence of the opposing party during the inspection, or any work product protections. Rather, the court's primary focus was the confidential information contained on the computer related to non-party patients and defendants' non-party employees.

---

[29] *Id*. at 642.
[30] *Id*. at 643.
[31] *Id*. at 648.
[32] *Id*. at 648-49.
[33] *Id*. at 649.

Given the lack of binding case law from either this district or the Tenth Circuit Court of Appeals, the Court looks to other districts for guidance. In addition to *G.D.*, Plaintiffs rely upon a decision from the Northern District of California, *Davidson v. Apple*,[34] and a Northern District of Texas case, *Galitski v. Samsung Telecommunications Am., LLC*[35], both of which are distinguishable.

In *Davidson*, the plaintiffs alleged their iPhone touchscreens were defective, and Apple sought to test the plaintiffs' phones.[36] Although the parties agreed on the appropriateness of an inspection, and the appointment of a neutral expert to perform the testing, the parties could not agree on a protocol for doing so.[37] Although Apple insisted its testing would be non-destructive, it refused to disclose the tests it planned to run, relying on work product protection. The court found the plaintiffs' "fears of data destructions and concerns about Apple taking unfair advantage of its opportunity to test their iPhones are not to be dismissed lightly," and distinguished the sophisticated iPhones from other inspection cases involving items such as tires, hair dryers, and power tools.[38]

The *Davidson* court was "not convinced that the work product doctrine [was]

---

[34] *Davidson v. Apple*, No. 5:16-cv-0492-LHK, ECF No. 162 (N. D. Cal., San Jose Division, Dec. 14, 2017) (unpublished).

[35] *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2014 WL 3610789, at *7 (N.D. Tex. July 22, 2014)

[36] *Davidson*, No. 5:16-cv-0492-LHK, ECF No. 162, at 1 (N. D. Cal., San Jose Division, Dec. 14, 2017).

[37] *Id*. at 2.

[38] Although the *Davidson* court did not cite case law for each of these items mentioned, this Court has reviewed various decisions involving these or similar items. *See, e.g., Hajek*, 2009 WL 2229902, at *1 (testing automobile tires and rims); *Cottrell*, 2009 WL 5213876, *2 (testing a power drill); *Nationwide Mut. Fire Ins. Co. v. Hamilton Beach/Proctor-Silex, Inc*., No. 3-06-CV-2109-G, 2007 WL 1058219, at *2 (N.D. Tex. Apr. 9, 2007) (testing of a coffee maker and microwave oven).

implicated in the testing" and, even if it were, the protection "should give way to the exception in Fed. R. Civ. P. 26(b)(3)(A)(ii), because the court believe[d] plaintiffs have a substantial need for the information . . . and likely cannot get it by other means."[39] The court ordered the testing to be completed by a neutral experts, but required both sides to identify each test in advance, so that the parties had the opportunity to object, and ordered that test results be given to both sides.[40] However, the *Davidson* court did not address the distinction between destructive and non-destructive testing, but focused on its distrust of Apple's refusal to disclose any information regarding its planned testing methods. And, although the court did not find the work product doctrine implicated, this court disagrees, as discussed in more detail below.

In *Galitski v. Samsung Telecommunications Am., LLC*,[41] defendant Samsung sought to compel plaintiffs to provide their mobile phones for non-destructive testing in a case arising from allegedly defective Galaxy S mobile phones. Plaintiffs did not oppose testing but asked that it be performed by a neutral expert to preserve evidence and ensure the phones were not altered. Samsung did not oppose videotaping or allowing plaintiffs' representative to attend.[42] The court found the non-destructive testing would "aid in the search for truth about" relevant matters, and granted Samsung's request for testing, including the transportation of the phones from California to Texas, videotaping of the testing, and attendance by plaintiffs' representative, but imposed specific protocols for

---

[39] *Id*. at 4-5.
[40] *Id*. at 5.
[41] *Galitski*, 2014 WL 3610789, at *7.
[42] *Id*.

the testing.[43]  The court also ordered Samsung to "provide plaintiffs' counsel a reasonably specific description of the tests to be performed and the procedures to be followed" prior to the testing, to give plaintiffs a chance to object.[44] Despite some similarities, the *Galitski* decision is distinguishable from the facts before this court, because neither the parties nor the court addressed the work product or consulting expert protections, and there was no dispute regarding attendance of the opposing party's representative.

Not only are these cases relied upon by Plaintiffs distinguishable, but this Court prefers to follow the number of districts allowing the parties to conduct non-destructive testing outside the presence of the opposing party.  The Court recognizes many of the courts permitting private, non-destructive testing were dealing with less sophisticated equipment,[45] and acknowledges the increased concerns regarding the preservation of evidence in a complex computerized device, particularly when one party may have

---

[43] *Id*. at *8.

[44] *Id*.

[45] *See, e.g., Blundon v. Goodyear Dunlop Tires N. Am. Ltd*., No. 11CV990S, 2012 WL 5473069, at *1 (W.D.N.Y. Nov. 9, 2012), *objections overruled*, No. 11-CV-990S, 2013 WL 104932 (W.D.N.Y. Jan. 8, 2013) (inspection of tires in a products liability action; court permitted non-destructive private inspection by defendant, and warned defendant that failure to return the tires and rims in the same condition would result in an adverse instruction); *Lopez v. Cooper Tire & Rubber Co*., No. 3:11-CV-375-J-25JBT, 2011 WL 3035086, at *1 (M.D. Fla. July 25, 2011) (allowed private, non-destructive inspection of tires and rims); *Cottrell*, 2009 WL 5213876, at *2 (granting defendant's motion to produce an electric hammer drill for private, non-destructive testing); *Diepenhorst v. City of Battle Creek*, No. 1:05CV00734, 2006 WL 1851243, at *1 (W.D. Mich. June 30, 2006) (permitting private, non-destructive testing of original journals, notes, calendars, and other documents).  *But see Shoemaker*, 154 F.R.D. at 235 (denying plaintiffs' motion to attend defendant's non-destructive testing of unspecified vehicles).

proprietary knowledge of the device. But the sophistication of the device at issue does not lessen the work product or consulting expert protections afforded the testing party.

Although neither the District of Kansas nor the Tenth Circuit Court of Appeals appears to have reached the issue of whether the work product doctrine or consulting expert protections apply to a Rule 34 inspection, other jurisdictions have analyzed the topic.[46] In one such case, *Shoemaker v. Gen. Motors Corp.*, our neighbors in the Western District of Missouri were faced with whether to permit the plaintiffs to attend testing performed by defendant on unspecified vehicles.[47] The *Shoemaker* plaintiffs were concerned regarding the integrity of any tests performed by General Motors. In its discussion of work product concerns, the court found:

> The decision of what to test and how is essentially a working-out of the defendant's interpretation of facts and testing of its defenses. Those processes involve either the attorney's mental processes or the opinions of consulting experts. Both are protected. . . .
>
> [T]he decision about what to test and how is the embodiment of the attorney's legal theories. Allowing plaintiffs' lawyers to be present at these tests would intrude impermissibly on the development of defendant's case.

---

[46] *See, e.g.*, *Cottrell*, 2009 WL 5213876, at *2 (granting defendant's motion to compel plaintiff to produce the subject hammer drill for private, non-destructive testing; finding "Rule 26(b)(4)(B) applies in this case. Rule 26(b)(4)(B) protects against the disclosure of an attorney's mental impressions, conclusions, opinions or legal theories, including the decisions about what to test and how[,]" and "[t]he purpose of Rule 26(b)(4)(B) is "to promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation."") (internal citations omitted) (Note that in the 2010 Amendments to Rule 26, former Rules 26(b)(4)(B) and (C) were renumbered (D) and (E)). *See also Hajek*, 2009 WL 2229902, at *7 (granting in part defendants' motion to compel tires and rims for private, non-destructive testing); and *Shoemaker*, 154 F.R.D. 235 (discussed in detail herein).

[47] *Shoemaker*, 154 F.R.D. at 236. Plaintiffs contend the dispute involved exemplar vehicles, not the *Shoemaker* plaintiffs' own vehicles (Resp., ECF No. 76 at 2, note 1). However, this is entirely unclear on the face of the written opinion. Regardless, the Court does not find this fact to be material to its decision.

General Motor's lawyers do not design or conduct these tests by themselves; they need the assistance of experts. These experts may be expected to testify or they may be retained for consultation only. Insofar as those experts are expected to testify at trial, their opinions and the facts on which those opinions are based are certainly discoverable . . . However, information about the facts known and opinions held by consulting experts is protected by Fed. R. Civ. P. 26(b)(4)[D] and should be disclosed only on a showing of "exceptional circumstances." Plaintiffs' fears do not constitute exceptional circumstances.[48]

This Court agrees with much of the *Shoemaker* analysis. As a rather simplistic example, perhaps some combination of behaviors (starting the car, turning on the radio, then using the uConnect to connect a cell phone by Bluetooth; versus starting the car, connecting a phone, then switching to the radio) causes the uConnect to behave differently. Defendant's attorney, and its consulting expert, are entitled to determine "what to test and how"—to prepare their own theories and defenses—outside the watchful eye of Plaintiffs. Plaintiffs have provided no evidence "to justify requiring [Defendant]'s experts to . . . perform such testing under [P]laintiffs' direct supervision and recording, while [P]laintiffs' experts were not subject to such scrutiny."[49] Although Plaintiffs are understandably concerned regarding their personal vehicle, the vehicle became "pivotal evidence upon which all parties are equally entitled to perform testing and inspection" upon the filing of this case.[50]

And, although the work product protection *may* yield to the exception in Fed. R. Civ. P. 26(b)(3)(A)(ii), *if* Plaintiffs demonstrate a substantial need for the information and

---

[48] *Shoemaker*, 154 F.R.D. at 236.
[49] *Hajek*, 2009 WL 2229902, at *4.
[50] *Id*.

likely cannot get it by other means, the Court finds Plaintiffs failed to establish an inability to access similar testing from its own experts, both to prepare their own theories and to provide a "check" on the integrity of Defendant's tests. Likewise, Plaintiffs' fears alone—absent any supporting evidence—do not constitute "exceptional circumstances" to obtain the facts and opinions held by Defendant's consulting experts under Rule 26(b)(4)(D)(ii). If Defendant later chooses to designate any consulting expert present during the inspection as a testifying expert, information about the inspection will then be subject to discovery pursuant to Rule 26(b)(4)(A).[51]

The Court is troubled by Plaintiffs' failure to respond to defense counsel's affidavit explaining the parties' discussion of the wiTECH device and other inspection methods.[52] Instead, Plaintiffs assert ignorance of Defendant's planned testing, branding it "secret and undisclosed." After reading defense counsel's affidavit, though, to which Plaintiffs failed to respond, the Court finds Plaintiffs' allegations of secrecy disingenuous, at best.

Although this Court finds the work product and consulting expert protections implicated, Plaintiffs' concerns regarding Defendant's proprietary knowledge of the uConnect system cannot be taken lightly, much like the *Davidson* court's concerns regarding Apple's proprietary knowledge of the iPhones.[53] But unlike *Davidson*, where Apple completely refused to disclose any of its testing methods, leading the court to be

---

[51] *See Cottrell*, 2009 WL 5213876, at *2 (quoting *Shoemaker*, 154 F.R.D. at 236).
[52] Rosenberg Decl., ECF No. 74 ¶¶ 9-11 (describing counsel's telephone call on April 10, 2018).
[53] *See Davidson*, No. 5:16-cv-0492-LHK, ECF No. 162, at 1 (N. D. Cal., San Jose Division, Dec. 14, 2017).

distrustful of its planned testing, here Defendant has been forthcoming about at least two of its inspection methods (wiTECH and a test drive). Because Defendant has already disclosed some of the technology it plans to use, it appears a minimal burden for Defendant to—prior to its inspection—generally disclose those testing methods which require it to physically attach Plaintiffs' vehicle to any computerized/electronic apparatus, to assuage Plaintiffs' concerns about the potential use of solely proprietary equipment and its potential to affect the integrity of the data in the vehicle. This does not mean Defendant must disclose the order of its tests, or the nature of all inspections, but simply identify the device itself (i.e., the wiTECH device).

In addition to the work product and consulting expert protections implicated by the testing, when balancing interests of the parties, the Court finds the "degree to which the proposed inspection" will aid in the search for truth is greater than "the burdens and dangers created by the inspection."[54] Permitting Defendant to conduct private testing protects its attorneys' mental impressions and theories and its consulting expert's opinions and encourages an "even playing field." Prior disclosure of specific testing apparatuses should put Plaintiffs at ease and give them the opportunity to object to specific method, as well as provide Plaintiffs the chance to use the same equipment to test the vehicle in order to ensure the integrity of Defendant's testing. Without a concrete reason to believe data will be destroyed, Plaintiffs' *fear* that data might be destroyed is simply too speculative to be prejudicial. And, Defendant's duty of candor to the court

---

[54] *Ramos*, 292 F.R.D. at 408 (citing *Hunley*, 2013 WL 1681836, at *3 (quoting *Scruggs*, 278 F.R.D. at 700)).

and the potential of spoliation sanctions outweigh Plaintiffs' assumption that damage *might* occur. Any risk of loss occurring during Defendant's testing will be borne by Defendant.[55]

The Court also finds the financial and scheduling burden to Plaintiffs to be minimal. Plaintiffs will choose the location of the testing, Defendant promises to complete its testing during one business day, and Defendant will bear all costs of the inspection—including a rental car for Plaintiffs and Plaintiffs' choice of either mileage reimbursement for Defendant's planned test drive, or $10 in gasoline.

Although Plaintiffs requested the appointment of a neutral expert in their briefing, this subject clearly was not previously discussed between the parties and the Court finds it unnecessary on the facts of this dispute. Frankly, Plaintiffs' objections, on the whole, could be disregarded as waived,[56] given that Plaintiffs failed to object in their initial discovery response. However, given the novelty of the issue in this district, and Defendant's failure to address waiver in its briefing, the Court chose to address the merits of the parties' arguments.

## C.    Conclusion

Defendant's planned inspection implicates the work product and consulting expert protections, and Plaintiffs demonstrated no true prejudice resulting from Defendant's

---

[55] *See Lopez*, 2011 WL 3035086, at *2-3 (permitting the private, non-destructive testing of evidence by defendant with certain conditions, and noting any risk of loss remains with defendant until the evidence is received back by plaintiff's counsel).

[56] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005) ("Objections initially raised but not relied upon in response to the motion to compel will be deemed abandoned.")

non-destructive inspection and testing outside the presence of Plaintiffs' counsel. Plaintiffs can conduct their own testing to ensure the integrity of Defendant's inspection, and they will be compensated for their inconvenience. For these reasons, the Court finds Defendant is permitted to inspect Plaintiffs' vehicle privately, subject to the following conditions.

**One week prior** to its planned inspection, although Defendant is not required to outline its entire inspection process to Plaintiffs, Defendant's counsel must identify to Plaintiffs any outside device(s) it intends to connect to Plaintiffs' vehicle which could result in the download or alteration of data. This will permit Plaintiffs the opportunity to object to the use[57] and allow Plaintiffs to perform their own testing. Plaintiffs will select the location of the dealership at which the inspection will occur, as outlined by Defendant's request. Defendant must bear all reasonable costs arising from the inspection. During its inspection, Defendant will be fully responsible for the vehicle while in its temporary custody. Plaintiffs are encouraged to adequately document and/or test the condition of the vehicle (such as conducting their own wiTECH testing) before delivering it to Defendant for inspection. Should the vehicle be damaged or materially altered while in Defendant's custody, Plaintiffs may request sanctions for the destruction

---

[57] The Court expects any objection to be well-founded and supported by empirical evidence. Furthermore, the parties must confer as required by D. Kan. Rule 37.2, and are strongly encouraged to consider arranging a telephone conference with the undersigned magistrate judge before filing a motion related to such objection.

or spoliation of evidence.[58]   Finally, Defendant must provide to Plaintiffs a printout of any diagnostic codes revealed during its inspection.[59]

Despite the partial granting of Defendant's motion, at this juncture, the Court finds an award of sanctions inappropriate under Fed. R. Civ. P. 37(a)(5).   Neither party requested an award of sanctions, and the circumstances of this dispute, including the well-reasoned positions of both parties, in light of a lack of binding case law, make an award of expenses unjust.   Each party will bear its own expenses related to the motion.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Production of Plaintiffs' Vehicle for a Private, Non-Destructive Inspection (ECF No. 72) is **GRANTED in part** as set forth above.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 14th day of August 2018.

   _s/ Gwynne E. Birzer_     
GWYNNE E. BIRZER
United States Magistrate Judge

---

[58] *See Hatfield v. Wal-Mart Stores, Inc.*, 335 F. App'x 796, 804 (10th Cir. 2009) ("An instruction on adverse inference may be an appropriate sanction for spoliation of evidence."); *see Ramos*, 292 F.R.D. at 411 (quoting *Adams v. Thyssenkrupp Safway, Inc*., No. 2:09-CV-01342 JAM KJ, 2010 WL 2850769, at *4 (E.D. Cal. July 20, 2010) (noting "plaintiff has a recourse should defendant lose, destroy, damage, or otherwise materially alter the pieces of scaffolding plank," mainly that he "may request that the court impose evidentiary sanctions for the destruction or spoliation of evidence.").

[59] In Defendant's Reply, it offers to provide "a printout of any DTCs [assumed to be "Diagnostic Trouble Codes"] revealed during the inspection."  (ECF No. 77 at 4, note 4.)